IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUNICIPAL REVENUE SERVICES, INC., | : | CIVIL ACTION NO. **4:CV-05-0671** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | FILED |
| XSPAND, INC. and | : | SCRANTON |
| BEARS STEARNS & CO., INC., | : | |
| | : | SEP 2 8 2006 |
| Defendants | : | |
| | | PER ___ m - £ l |
| | | DEPUTY CLERK |

## MEMORANDUM AND ORDER

Following a telephonic conference with counsel on August 14, 2006, the Court entered an Order on August 17, 2006 (Doc. 156), directing counsel for Defendant Xspand to produce, for an *in camera* inspection, the documents listed in the Privilege Log prepared by counsel for deposition witness Gregory R. Melinson, Esquire. Specifically, the Court directed that Defendant Xspand was to submit, for *in camera* review, the records and documents of Attorney Melinson subpoenaed by Plaintiff, which were not produced by Defendant Xspand to Plaintiff based on a claimed attorney/client privilege objection. The Court also permitted counsel to submit short briefs regarding the documents subpoenaed from Attorney Melinson, to which Defendant Xspand asserted a privilege. Both counsel for Plaintiff and for Xspand filed their Briefs, with attached exhibits, on August 25, 2006. (Docs. 160, 163). On September 7, 2006, counsel for Xspand sent the Court a letter dated September 6, 2006, with attached documents, regarding Attorney Melinson's work for Xspand, for *in camera* review.[1]

---

[1]The September 6, 2006 letter, which has been copied to all counsel without enclosures, has not been filed since it has attached to it the Privilege Log created by counsel for Attorney

In his September 6, 2006 letter, counsel for Xspand states that while the e-mails at issue regarding Attorney Melinson contain a total of 111 items, Xspand could not locate 47 of the 111 e-mails listed on the Privilege Log. Counsel indicates that Xspand had to recover on its own from its e-mail system, by using the Privilege Log, the documents referenced on the Log, since counsel for Attorney Melinson would not deliver any of the documents to counsel for Xspand. Counsel for Xspand has indicated that, of the 47 e-mails that have not been submitted to the Court, 14 were not sent to Xspand *via* e-mail, and 33 e-mails were from or to Charles Smith. Counsel also states that Xspand has found a few other documents not referenced in the Privilege Log and has included them with the *in camera* documents and labeled them as A through L.

The Court conducted a telephonic conference on September 7, 2006, with all counsel of record, as well as Attorney McDermott, counsel for non-party Deloitte & Touche LLP.[2] During the conference, counsel for Xspand reiterated that Xspand could not get 47 e-mails for its *in camera* submission to the court, since they were not sent to Xspand, Xspand is not in possession of them, and only Attorney Melinson has them. Counsel for Plaintiff indicated that, at Attorney Melinson's Deposition, counsel for Xspand represented Attorney Melinson and advised him not to respond to some questions due to the attorney/client privilege. Thus, Plaintiff's counsel argued that Xspand

Melinson (Attorney Stapleton) along with documents for *in camera* review.

[2]Attorney McDermott was permitted to participate in the telephone conference since one of the issues on the conference agenda was the Plaintiff's Motion to Compel compliance with its subpoena to non-party Deloitte & Touche LLP filed in the Eastern District of Pennsylvania, but which was referred to this Court by Judge Giles of the Eastern District of Pennsylvania for disposition.

has all of Attorney Melinson's records at issue in its possession. In fact, Plaintiff has attached to its August 25, 2006 letter brief an exhibit containing portions of Attorney Melinson's February 14, 2006 deposition transcript in which counsel for Xspand objected to questioning regarding who Attorney Melinson spoke with at Xspand concerning marketing opportunities in Pennsylvania based on the attorney/client privilege. (Doc. 163, Ex. 6). Counsel for Xspand stated in his objection that the services Attorney Melinson was rendering with respect to marketing opportunities for Xspand in Pennsylvania involved counseling for opportunities with respect to the development of business relationships with the counties, which was stated to be a legal purpose. At Attorney Melinson's deposition, counsel for Plaintiff stated that, since Attorney Melinson testified that he was exploring a marketing opportunity for Xspand and not rendering any legal advice or opinions on legal issues, he could respond to questions about these business opportunities he pursued for Xspand not related to legal advice. Counsel for Plaintiff then asked Attorney Melinson questions about his discussions of marketing opportunities for Xspand in Pennsylvania with certain individuals, such as Mr. Scura and Mr. Shadle, as well as Mr. Garzone. Attorney Melinson's counsel, Attorney Stapleton, then instructed him not to respond to these questions.

Initially, we note that at the September 7, 2006 conference, counsel for Plaintiff indicated that Xspand was in violation of the Court's August 17, 2006 Order since it did not provide all of Attorney Melinson's records for *in camera* review within the prescribed time period. Plaintiff's counsel indicated that Plaintiff would be filing a Motion to Enforce this Court's July 26, 2006 and

3

August 17, 2006 Orders.[3]  We accept, at this time, the representation of Xspand's counsel for not providing the Court with all of the Melinson documents, *i.e.*, the missing 47 e-mails were not sent to Xspand, they were not in Xspand's possession, and counsel for Mr. Melinson would not provide them to Xspand after being requested to do so for *in camera* review by the Court.  Thus, at this time, we do not find Xspand in willful violation of the Court's August 17, 2006 Order (Doc. 156). Further, counsel for Xspand indicated that Defendant will continue to try and obtain the missing e-mails, and if it obtains any more documents, it will submit them to the Court forthwith.  We also consider the fact that counsel for Xspand has, on his own, provided the Court with e-mails labeled A through L, which were not even specified on the Privilege Log.

As counsel for Xspand represented to the Court during the September 7, 2006 conference call, he has continued to search for the missing e-mails listed on Attorney Melinson's Privilege Log, and on September 26, 2006, he faxed the Court a letter, with two additional e-mails from the Privilege Log attached, for *in camera* review.  Thus, 45 e-mails now remain as not yet provided for *in camera* review.  Counsel's September 26, 2006 letter further supports our finding that Defendant Xspand has not been in willful violation of the August 17, 2006 Order.  We shall review the stated two recently submitted e-mails, along with our review of the earlier submission of *in camera* documents by Xspand.

Following the September 7, 2006 conference, counsel for non-party Gregory Melinson, Patrick Stapleton, Esquire, filed a Motion to Intervene under Fed. R. Civ. P. 24(a), with an attached

---

[3]The Court granted Plaintiff permission to file the stated Motion to Enforce the Court's Orders and waived the pre-conference with opposing counsel requirement to do so.

Brief. (Doc. 173). The Brief notes (Doc. 173, p. 3, n. 1 of Brief) that counsel for Plaintiff and Xspand have indicated that they will not oppose the Motion to Intervene. In fact, during the September 7, 2006 conference, counsel for Plaintiff indicated that he would not oppose Mr. Melinson's anticipated Motion to Intervene.

We shall grant the unopposed Motion to Intervene of Non-Party Mr. Melinson for purposes of determining if his documents regarding his work for Xspand requested by Plaintiff during the course of discovery in this case, *i.e.*, subpoena for deposition testimony of Mr. Melinson, are protected by the attorney/client privilege.

As the Court noted in *Prudential Ins. Co. v. Leach*, 2004 WL 1243763, *1, n.1 (E.D. Pa. 2004):

> The Court of Appeals for the Third Circuit has stated that a non-party is permitted to intervene under Rule 24(a) as a matter of right only if: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condo. Ass'n v. Dave Stabbert Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995); *see also* Fed.R.Civ.P. 24(a)(2).

We agree with counsel for Mr. Melinson that he satisfies the factors permitting a non-party to intervene. (Doc. 173, p. 4). Mr. Melinson's Motion is timely, as it was made during discovery before the Court ruled on whether Defendant Xspand was required to produce for Plaintiff the e-mails listed on Mr. Melinson's Privilege Log. No prejudice to the parties will result if Mr. Melinson is allowed to intervene with respect to being heard on the documents claimed to be protected by the attorney/client privilege. Further, we find that Mr. Melinson has a sufficient interest with respect

to the documents listed on his Privilege Log, since Defendant Xspand was his client and the attorney/client privilege has been asserted as to communications between him and Xspand. Mr. Melinson's interests may be impaired if the documents were ordered to be produced to Plaintiff and they were protected by the stated privilege. Additionally, we do not find that any of the parties have an interest with respect to the documents at issue identical to the interests of Mr. Melinson's. As Mr. Melinson states in his Brief (Doc. 173, p. 4 of Brief), his interests affect his business with legal clients as well as his other professional relationships. Also, as indicated, the parties have not opposed Mr. Melinson's Motion to Intervene. Finally, we find that Mr. Melinson has a sufficient legal interest with respect to the documents listed on his Privilege Log to be granted intervention as a matter of right under Rule 24(a)(2).

In his Brief, Mr. Melinson argues that he should not be compelled to produce the documents at issue regarding his representation of Xspand, since there was no valid subpoena issued, since the documents are protected by the attorney/client privilege, and since production of the documents constitutes an unreasonable burden on a disinterested non-party. With respect to the argument of Mr. Melinson that the documents are protected by the stated privilege, he relies largely upon the arguments made by Defendant Xspand in this regard. (Doc. 173, p. 4 of Brief).

At the outset, we find no merit to Mr. Melinson's argument that there was no valid subpoena issued by Plaintiff since his office is located in the Eastern District of Pennsylvania and is more than 100 miles from the Middle District of Pennsylvania. Plaintiff states that it issued a subpoena for Mr. Melinson for his deposition testimony and for documents, and that the subpoena was served on him on October 11, 2005. Plaintiff claims that no real objections to the subpoena were raised until

Mr. Melinson appeared for his deposition in February 2006. Counsel for Mr. Melinson states that Mr. Melinson objected to the subpoena for the above stated reason and did not accept service of it, but he states that Mr. Melinson appeared at his deposition on February 14, 2006 in Philadelphia. However, it is claimed that Mr. Melinson did not appear under authority of the subpoena. Plaintiff acknowledges that at his deposition, Mr. Melinson contended that the Plaintiff's subpoena was not valid since it was issued out of the Middle District of Pennsylvania and he is located in the Eastern District of Pennsylvania.

Notwithstanding Mr. Melinson's claim that he did not to appear at his deposition in this case by virtue of Plaintiff's subpoena, which he asserts was invalid, he did appear and testify. Subsequently, his counsel produced a Privilege Log with respect to the documents requested in Plaintiff's subpoena, which is now at issue herein. Under these circumstances, we find that by voluntarily appearing at his deposition instead of moving to quash the subpoena for the stated reason, and thus preventing Plaintiff from remedying any defect with respect to its original subpoena, Mr. Melinson effectively waived his objection to the validity of Plaintiff's subpoena. We find that it would be too prejudicial to now require Plaintiff to re-subpoena Mr. Melinson's documents and that it would unnecessarily delay this action from proceeding forward. Further, the Court has now received, *in camera*, several of the requested documents regarding Mr. Melinson's contracted services for Xspand, a party Defendant, identified on the Privilege Log prepared by Mr. Melinson's counsel. Plaintiff has also submitted discovery requests to Xspand, a party Defendant in this action, for various documents which we find encompass documents regarding services rendered for Xspand to promote its product in Pennsylvania.

Plaintiff argues that none of the requested documents deal with Mr. Melinson's legal representation of Xspand, and claims that the documents relate to services Mr. Melinson rendered for Xspand to promote Xspand's business and product of purchasing tax liens from Pennsylvania governmental entities. Xspand and counsel for Mr. Melinson argue that all of the documents sought are privileged since they relate to attorney/client communications.

*Robertson v. Allstate Ins. Co.*, 1999 WL 179754 (E.D. Pa.), discusses the discoverability of documents which are asserted to be protected under the Pennsylvania attorney/client privilege. In *Robertson*, the Court stated as follows:

> In Pennsylvania, the [attorney/client] privilege is governed by 42 Pa. Cons.Stat. Ann. § 5928, which provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." *See* 42 Pa. Cons.Stat. Ann. § 5928. In order to invoke the attorney-client privilege, the party resisting discovery must show the following:
>
> > (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> *Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (citations omitted).

*Id.* at pp. *4-*5; *see also Mass. School of Law at Andover, Inc. v. ABA*, 895 F. Supp. 88, 90 (E.D. Pa. 1995).

The Court in *Mass. School of Law* concluded that in its case, the attorney/client privilege did not exist since the attorney was not acting as a lawyer with respect to his services rendered, including a draft report, and since "the communication underlying the report were not exchanged for the purpose of securing a legal opinion, legal services, or assistance in some legal proceeding." *Id.* The Court also stated that "in order for the privilege to apply, the "communication must be made by the client to the attorney acting as an attorney and not, *e.g.*, as a business advisor." *Id.* (*citing Barr Marine Prods. Co., Inc. v. Borg-Warner*, 84 F.R.D. 631, 634 (E.D.Pa.1979).

As in the *Mass. School of Law* case, we agree with our Plaintiff that the *in camera* documents indicate that Mr. Melinson was not retained by Xspand for legal advice by an attorney regarding the new Pennsylvania legislation dealing with the sale of tax liens by taxing authorities to third party purchasers, as Xspand argues (Doc. 160, p. 4). Rather, Mr. Melinson was retained, as Plaintiff states (Doc. 163, p. 10), due to his role with Pennsylvania Intergovernmental Cooperation Authority and the Board of the Commonwealth Financing Authority, as well as because of his close personal relationships with prominent governmental officials, who Xspand felt would assist it in selling its product and purchasing the tax liens of several municipalities, counties and school districts in Pennsylvania. We find that the *in camera* documents support Plaintiff's position, and not Xspand's, as to the role played by Mr. Melinson in this case, *i.e.* offering legal advice and opinions or as a business advisor and providing extensive networking services.

9

Thus, we find that the attorney/client privilege does not apply with respect to any of the documents at issue[4], since the *in camera* submitted e-mails were clearly not sent in order for Xspand to obtain legal opinions, legal services and legal assistance from Mr. Melinson, either with respect to the claimed new Pennsylvania law regarding the sale of tax liens by taxing authorities to third parties (Doc. 160, p. 4) or with respect to any legal proceeding.  The e-mails at issue deal with meetings Mr. Melinson was to set up for Xspand to promote its product and services, as well as his networking with various Pennsylvania governmental officials.  We do not find that these e-mails were legal in nature, and they do contain opinions of law from Mr. Melinson to Xspand.  Also, as discussed below, most of the e-mails were either sent to Mr. Melinson and various other individuals or sent by Mr. Melinson to Xspand representatives and others who were not claimed to be part of the attorney/client relationship.  Some e-mails were from county officials to personnel of Xspand and were not even copied to Mr. Melinson.  *See, e.g,* Bates Stamped X3946.  The e-mails also deal with business plans of how to best promote Xspand's services in the meetings with governmental officials by explaining the advantages and monetary benefits of taxing entities outsourcing their lien

---

[4]Our stated finding includes the two recently submitted e-mails which were missing from the first compilation of e-mails listed on the Privilege Log submitted by Xspand for *in camera* review.  One of the e-mails submitted on September 26, 2006 is dated January 26, 2005, and is from Dianne Mazzola (of Scura's firm) with respect to setting up a conference call with Mr. Scura the following day regarding Montgomery County.  It was sent to several people, including Attorney Melinson, Charles Smith, and Kurt Shadle.  The second set of e-mails submitted on September 26, 2006 contains three separate e-mails.  Two are dated January 2 7, 2005, and one is dated January 28, 2005.  The January 28, 2005 e-mail is from Shadle to Smith, Scura, Melinson, *et al.* regarding Norristown Borough and a request for Montgomery County personnel to send Smith files, seemingly containing information with respect to the County's tax liens and the deadlines for filing liens.  The January 27, 2005 e-mail consists of the response to the request for information from a County employee and copies of citations regarding Pennsylvania Real Estate Tax Sale Law sent from Smith to the County personnel.

servicing functions.   These e-mails did not deal with legal advantages to taxing authorities outsourcing their lien servicing functions, but dealt with purely financial incentives to save the entities money.

We have reviewed all of the *in camera* documents Xspand has submitted regarding the Melinson e-mails referenced in the Privilege Log *sans* the missing 45 e-mails.  We agree with Plaintiff that the documents largely deal with Attorney Melinson's role as a consultant for Xspand and as a business advisor with respect to marketing opportunities and development of business relationships of Xspand with various counties, school districts and municipalities in Pennsylvania to promote and sell Xspand's product of purchasing tax liens from them.  Indeed, Plaintiff's exhibit attached to its letter brief shows that Attorney Melinson signed a retainer agreement with Xspand which provided that he would be paid $5000 per month plus expenses for the following:

> [T]he representation of the Company [Xspand] on matters relating to governmental affairs in Pennsylvania, initially working with you to develop your relationships in Delaware, Montgomery, Berks, and other Pennsylvania counties you request.  We shall also make ourselves available to consult with you and discuss various other issues arising both in Pennsylvania and elsewhere.  Finally, we understand that if Xspand is successful in developing business in Pennsylvania, it will endeavor to use Drinker Biddle & Reath LLP [the law firm with which Melinson was associates] as its transactional attorneys for transactions arising from this engagement.

(Doc. 163, Ex. 3 & Doc. 173, Ex. A).

Plaintiff also attached as an exhibit to its letter brief a copy of a May 25, 2004 e-mail from Charles Smith of Xspand to various individuals including, Scura, Shadle and Florio, with respect to Attorney Melinson's promoting the use of Xspand's services to Pennsylvania counties, as well as

exhibits including other e-mails and letters from Mr. Melinson to Pennsylvania County Commissioners, all with the purpose of promoting the services of Xspand "in monetizing the value of their [Pennsylvania counties and municipalities] delinquent tax receivables." (Doc. 163, Ex. 4). These exhibits, as well as the exhibits with the portions of the Scura and Shadle deposition testimonies (Doc. 163, Exs. 1 & 2), make quite clear that Attorney Melinson was acting as a business advisor and consultant for Xspand and not as a lawyer. Plaintiff's Exhibit 7, Doc. 163 consists of copies of other e-mails which relate to Attorney Melinson's role in setting up meetings and discussions with officials from Delaware, Montgomery and Lancaster Counties. Again, they show that Attorney Melinson was not acting as a lawyer for Xspand in connection with communications for the purpose of securing and providing opinions of law or legal services or assistance for Xspand.

In reviewing the *in camera* documents, we come to the same conclusion we reached from reviewing Plaintiff's exhibits, *i.e.*, the documents largely relate to Attorney Melinson's role of a consultant and business advisor or intermediary with the purpose of setting up meetings with Pennsylvania municipalities, school districts, and counties in order to promote Xspand's services in "in monetizing the value of their [Pennsylvania counties and municipalities] delinquent tax receivables." The documents do not reflect any legal opinions or advice rendered by Attorney Melinson for Xspand. They reveal that Attorney Melinson's meetings he set up on behalf of Xspand and his communications on its behalf were done as a business advisor and consultant and not as an attorney. The documents show extensive networking performed by Mr. Melinson for Xspand in promoting its product with many important governmental officials. Indeed, it is clear that Xspand chose Attorney Melinson for this role as its business promoter and consultant due to his

close personal ties and connection with prominent individuals and government officials who were in positions to contract Xspand's services on behalf of Pennsylvania municipalities, school districts and counties.

Again, we simply do not find, upon our review of the *in camera* documents, *i.e.*, e-mails, which for the most part were sent to multiple parties, that Attorney Melinson was acting as Xspand's lawyer and was writing legal opinions for it. For example, in a June 2, 2004 e-mail from Attorney Melinson to Shadle and Scura, as well as Smith and Garzone, Re: Montco [Montgomery County], Mr. Melinson states that he spoke with a County Commissioner regarding Xspand's proposal and was informed the county was moving forward with Xspand and that Xspand had to come up with real numbers on savings for the County. *See* Bates Stamped document X3952.[5] There are similar e-mails dealing with the same type topics for Delaware and Lancaster Counties. One e-mail is the same e-mail Plaintiff has attached to its letter brief as an exhibit, Ex. 7, Doc. 163, and Bates Stamped X3960. Many of the e-mails at issue discuss setting up meetings with county personnel and Commissioners for the purpose of promoting Xspand's services and proposals with respect to purchasing the counties' delinquent tax liens, as well as the logistics of the meetings, *i.e.* who to attend, where and when to meet. One e-mail deals with Attorney Melinson setting up a meeting with Lackawanna County Commissioner Cordaro and Director of the Tax Claim Bureau Harrison. Bates Stamped X3967. One e-mail directly deals with Plaintiff and Norristown's consideration of

---

[5]Counsel for Xspand has Bates Stamped all of the documents he submitted *in camera* from X3945 to X4040 for convenience in referencing them. The Court certainly appreciates this courtesy of counsel. Counsel for Xspand is directed to also Bates Stamp the additional e-mails he submitted to the Court on September 26, 2006 for *in camera* review.

a recourse financing with MRS.  Bates Stamped X3970 & X3974.  In these e-mails, it is stated that Attorney Melinson's involvement is crucial in Norristown with respect to Xspand's interests. Attorney Melinson's involvement is clearly not related to rendering Xspand legal advice or a legal opinion, and the e-mails at issue do not relate to matters that are legal in nature.[6]

We also disagree with Defendant Xspand that Mr. Melinson was merely offering legal services to Xspand on the new laws giving municipalities power to sell their tax liens to third parties. In fact, we do not find any e-mail detailing a legal opinion with respect to the new legislation.  Nor do we find any e-mail from Mr. Melinson in which he acted in his capacity as a lawyer; rather, the e-mails show he was acting as a business advisor and consultant to promote Xspand's services and set up meeting with officials of municipalities to show how Xspand could be financially beneficial to them.  Thus, we do not find the *in camera* e-mails to deal with any legal advice of Attorney Melinson to Xspand regarding the new law.  We find that the e-mails, as evidenced by Bates Stamped X3970 and X3974 e-mails, are directly relevant to Plaintiff's case and that they support our finding that the *in camera* documents do not relate to Attorney Melinson acting as an attorney for Xspand, but relate to his role of acting as its business advisor and consultant.

We also disagree with Defendant Xspand's contention in its Brief (Doc. 160, p. 4), that the communications were being made by Xspand to Mr. Melinson in his capacity as an attorney and while he was acting as a lawyer.  Some e-mails deal with attempts by Attorney Melinson to broker purchase proposals with municipalities for Xspand to buy delinquent tax liens and with obtaining

---

[6]We note that our ruling with respect to the nature of Attorney Melinson's *in camera* documents is entirely consistent with our decision regarding Plaintiff's documents which the District Court directed to be submitted for *in camera* review.

data from tax claim bureaus regarding municipalities and school districts' tax claims. While Mr. Melinson gave Xspand personnel the heads up that county officials will expect them to have real numbers on their savings if they outsource their tax lien servicing to a third party, he did not provide any legal advice or opinions as to the legality of outsourcing. *See, e.g.,* Bates Stamped X3956. There is an e-mail from Smith to Shadle referencing their proposed legislation, which also appears to be an issue directly relevant to the instant case, insofar as we have directed Defendants to provide to Plaintiff with the draft legislation regarding the selling and purchasing of Pennsylvania tax liens by taxing entities. Bates Stamped X3974. Another e-mail deals with a query to Attorney Melinson as to how a competitor got data from the Montgomery County tax claim bureau. Bates Stamp X3976 & X3979. In some e-mails, Attorney Melinson is listed in a chain of recipients. We fail to see how Attorney Melinson (or Xspand) can claim the attorney/client privilege for these third parties whom he does not contend he represented in any capacity. If there was any reasonable basis to assert the attorney/client privilege with respect to these communications, by including several parties in the chain of e-mail addresses, any privilege was waived.

Plaintiff is mentioned in a January 30, 2005 e-mail from Smith to Attorney Melinson and others, including Scura and Shadle, as well as former Pennsylvania Lieutenant Governor Schweiker, questioning how counties could turn to "questionable tax claim monetization services such as MRS." Bates Stamped X3988.

In short, we do not find that the *in camera* submitted documents are legal in nature; rather, they deal with promoting Xspand's services to Pennsylvania counties, municipalities, and school districts. The e-mails discuss setting up meetings with public officials and convincing them to

commit to monetizing their tax claims through Xspand and showing them how it will have a beneficial effect on their revenue stream.  The e-mails indicate that officials would have to be shown how they will save money by outsourcing the tax claim bureau functions to Xspand, since tax claim bureaus do not do a good job with respect to collecting delinquent tax liens.  These e-mails largely relate to Attorney Melinson's role, as well the roles of others, in trying to show the taxing authorities of Pennsylvania how Xspand will save them money with respect to outsourcing the servicing of their delinquent tax liens.

We will, however, direct Xspand to redact certain e-mails from Attorney Melinson which deal only with the payment or lack thereof of his retainer fee from Xspand, not due to any attorney/client privilege, but due to lack of relevancy, *i.e.* Bates Stamped X3968, X3969, X3998-3999, 4001.

We also find Xspand's rebuttal to the Tax Claim Bureau Association as not involving any legal representation by Attorney Melinson to Xspand. Bates Stamped X4005-4009.  Nor do we find Xspand's Proposal for Servicing Montgomery County Tax Claim, Bates Stamped X4012-4023, to be a document regarding any legal advice Attorney Melinson rendered to Xspand or regarding legal opinions to it.  This document deals with how Montgomery County will agree to outsource its tax claim servicing to Xspand.

16

There are also e-mails about Xspand's strategy to deal with taxing authorities in Pennsylvania, and which taxing officials were in their favor and which were against them. However, we fail to see how these e-mails relate to any legal advice Attorney Melinson provided to Xspand. *See e.g.,* Bates Stamped X4036. These type e-mails were not legal in nature. Rather, they dealt with how it was deemed best to market Xspand's services for the particular municipality or county. We thus conclude, since Mr. Melinson was acting as a business advisor/networker and not as a lawyer with respect to his services for Xspand, the documents at issue are not privileged.

Moreover, we do not find any undue burden on non-party Melinson with respect to the production of the e-mails listed on his Privilege Log. Initially, we have found that the e-mails are relevant to the claims in this case and that they are not protected by the attorney/client privilege. Secondly, Xspand has produced most of the e-mails on the Privilege Log, with the exception of the stated missing 45 e-mails. We do not find it unduly burdensome to require Mr. Melinson to produce, for *in camera* review, only the missing 45 e-mails.[7]

Accordingly ,we shall direct Defendant Xspand to provide copies to Plaintiff of all of the *in camera* documents, Bates Stamped  X3945 to X4040, along with the *in camera* documents submitted to the Court on September 26, 2006, except for Bates Stamped documents X3968, X3969, X3998-3999, X4001, which shall be redacted. We do not find that the documents to be provided to Plaintiff are protected under the attorney/client privilege. Defendant Xspand shall

---

[7]We note that Plaintiff recently filed, on September 26, 2006, a Motion seeking, in part, to Compel Non-Party Melinson to Comply with Subpoena. (Doc. 180). Insofar as we are directing Attorney Melinson to provide the remaining 45 e-mails listed on his Privilege Log for *in camera* review, Plaintiff's Motion may be moot to this extent. However, we have not yet reviewed Plaintiff's Motion.

17

provide the stated documents to Plaintiff within **ten (10) days** of the date of this Order.  We will grant Non-Party Melinson's Motion to Intervene **(Doc. 173)** solely for the purpose of allowing him to be heard with respect to the disputed documents on his Privilege Log regarding his services for Defendant Xspand.  Further, we shall direct Attorney Melinson to provide to the Court, within **ten (10) days** of the date of this Order, for *in camera* review, the remaining 45 e-mails referenced on his Privilege Log which have not yet been submitted by Xspand to the Court.[8]

   **SO ORDERED.**

_____

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: September 28, 2006

---

   [8]We do not deem it necessary for counsel to file any further briefs following the stated *in camera* submission by Non-Party Melinson regarding the issue of whether the documents are protected by the attorney/client privilege in light of the briefs already submitted by counsel, including counsel for Mr. Melinson, and based on the foregoing Memorandum.