IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUNICIPAL REVENUE SERVICES, INC., | : | CIVIL ACTION NO. **4:CV-05-0671** |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| XSPAND, INC. and BEARS STEARNS & CO., INC., | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

On November 15, 2006, we held oral argument with counsel regarding Plaintiff's Motion to Compel Defendants' compliance with the Court's Orders of July 26, 2006 and September 11, 2006. (Doc. 195).[1] Plaintiff seeks the Court to direct Defendants to comply with each item listed on its November 6, 2006 status report (Doc. 215), and it seeks Defendants to produce additional documents with respect to its discovery requests which this Court has previously ordered Defendants to provide.[2]

---

[1] At the November 15, 2006, oral argument, we also considered the Plaintiff's Motion to Compel regarding Attorney Melinson. (Doc. 180). However, we have previously disposed of this Motion. (Doc. 221).

[2] On March 17, 2006, the District Court referred this case to the undersigned pursuant to 28 U.S.C. § 636(b) to dispose of all discovery disputes between the parties, both disputes that were ripe at the time of the Court's Order and disputes which become ripe thereafter. (Doc. 112). To that end, we held the May 25, 2006 oral argument regarding the ripe discovery motions, Docs. 97, 99, 103 & 121. On July 26, 2006, we issued a Memorandum and Order resolving the stated outstanding discovery motions. (Doc. 141). Plaintiff now asserts, in part, that Defendants have still not complied with the July 26, 2006 Order.

Plaintiff's Motion to Compel has been briefed and is ripe for disposition. (Docs. 205 & 216). Exhibits have been attached to Plaintiff's Motion and Defendants' Brief. (Docs. 195 & 216). Plaintiff also submitted Exhibits at the November 15, 2006 oral argument. Both parties, as directed submitted a status report regarding Plaintiff's Motion. (Docs. 215 & 217).[3]

After hearing argument from counsel regarding the latest discovery dispute centering around the Plaintiff's Motion to Compel (Doc. 195), we now resolve this outstanding discovery Motion. (Doc. 195).

Plaintiff requested the Court to order Defendants to comply with each item listed on its status report. (Doc. 215). Since Plaintiff has itemized the disputed categories of documents for which it is seeking Defendants to provide additional documents, we shall adopt those categories herein. (Doc. 215, items A.-H., pp. 2-9). We now address these categories *seriatim*.

### A. Documents Relating to Various Aspects of the Business Relationship Between the Defendants

Plaintiff has detailed its documents requests which are at issue herein. (Doc. 215, pp. 2-4). At oral argument, Plaintiff provided the Court with a copy of a Term Sheet between Defendants BSC and Xspand, which we had marked as Plaintiff #1. This document was previously Bates Stamped as X2405-X2427. Plaintiff argued that it wants the documents showing what BSC is doing

---

[3] In our Orders of October 16, 2006 and October 20, 2006 (Docs. 203 & 209), we directed the parties to file a joint status report prior to the oral argument regarding outstanding discovery matters. As stated, the parties filed their respective status reports on November 6, 2006. (Docs. 216 & 217). The attorneys for the parties could not agree upon a joint status report, which was actually directed to be filed by the Court, and submitted their own reports.

with Xspand, in terms of business relationships, and it wants to show that Xspand is merely acting for BSC in the market place. Plaintiff seeks cash flow documents between BSC and Xspand. As support for this request, Plaintiff contends that BSC played a role in payments made to Xspand executives. In its status report, Plaintiff also summarized what additional documents it seeks from Defendants. MRS contends that numerous documents have not been produced by the Defendants, despite the Court's Order, including documents reflecting payments made by Bear Stearns to support Xspand's business, Bear Stearns' payment of legal fees on behalf of Xspand, Bear Stearns' purchase of Xspand's business, consultant and compensation agreements, evidence of meetings attended by Bear Stearns' John Garzone, and many other documents. (Doc. 215, p. 4).

Initially, Defendants argued that Plaintiff's present Motion to Compel is in reality a Motion for Reconsideration of the Court's July 26, 2006 Memorandum and Order. As such, Defendants contend Plaintiff's Motion is untimely. Defendants stated that Plaintiff is rehashing items which the Court has already ruled upon in its stated Memorandum and Order.

We do not find, for the most part, that Plaintiff's present Motion is a reconsideration request, and we shall consider it.

Defendants specifically argued with respect to Item A. that Plaintiff offered no evidence that there are other responsive documents to Plaintiff's discovery requests which Defendants still have failed to produce. As Defendants noted, Item A. corresponds to Item 1. of the parties' May 17, 2006 Status Report, Doc. 126. The May 17, 1006 Status Report also listed the relevant discovery requests of Plaintiff which relate to Item A. for present purposes.

Defendants stated that Paul Scura, at his August 5 deposition, addressed the relationship between BSC and Xspand, and he described the joint venture between them. Defendants stated that this Court has ordered the production of the Term Sheet between Defendants to Plaintiff, and Plaintiff has received it. Defendants stated that BSC and Xspand did not really follow the provisions of the Term Sheet as verified by Scura in his deposition. Defendants contended that the business relationship between BSC and Xspand was in the Term Sheet and it was given to Plaintiff. Thus, Defendants stated that they complied with this Court's July 26, 2006 Order. Defendants claimed that Plaintiff also wants the money flow between BSC and Xspand to try and show an agency relationship between them. Counsel for Xspand represented that no joint venture agreement exists between BSC and Xspand.

In reply, Plaintiff argued that the Court, in its July 26, 2006 Order, allowed it to pursue the relationship between BSC and Xspand, and to get the documents relative to its Item #1. of the May 17, 2006 Status Report, Doc. 126. At the November 2006 oral argument, Plaintiff submitted its Exhibit Plaintiff #2, which is an e-mail dated September 29, 2005 from Douglas Badaszewski of Xspand to Thomas Moore of Chester City Council regarding an advance amount to present to BSC's credit committee with an attached copy of the City's executed Resolution authorizing the sale of its tax claims. (Bates Stamped CC01323-CC01326, & CC01530).

Plaintiff contends that BSC is really directing Xspand, is funding Xspand, is determining how much to pay Xspand's consultants, and is really running Xspand. Thus, Plaintiff seeks more documents regarding the business relationship between BSC and Xspand. Plaintiff stated that BSC purchased Xspand in 2006, and it also seeks documents regarding the purchase of Xspand by BSC,

which Plaintiff stated that Defendants will not produce.

Plaintiff also submitted at oral argument, Exhibits Plaintiff #3, #4 and #5, which are additional e-mails Defendants provided to Plaintiff during discovery.[4] The Plaintiff's exhibits deal with e-mails regarding a summary for the City of Chester on advances for its tax liens, expected fees from Allegheny's liens, and a review by BSC personnel, including Garzone, of a draft regarding the purchase of Delaware's liens.

As sur-reply to Plaintiff, Defendants argued that Plaintiff can re-depose Scura and depose Garzone and ask them questions regarding the relationship between BSC and Xspand. Defendants claimed that the documents they have given to Plaintiff have described the relationship between BSC and Xspand. Defendants also stated that they gave Plaintiff transactional documents regarding Defendants' purchase of tax liens from taxing authorities in Pennsylvania, and claimed that Plaintiff now wants to see all transactions of Defendants in Pennsylvania. Defendants argued that Plaintiff's

---

[4] We note that some of the documents relied upon by Plaintiff at the November 2006 oral argument, some of which were submitted as Exhibits, were documents which the Court reviewed *in camera* and directed Defendants to provide to Plaintiff. We also note that despite counsel for Plaintiff's recent protestations that Plaintiff's due process rights were being denied by the Court's expedited discovery dispute process requiring telephone conferences with the Court to try and resolve discovery disputes prior to the filing of a motion to compel, Plaintiff has been the beneficiary of several of the conferences in terms of additional documents which this Court has directed Defendants to produce to Plaintiff. Further, Plaintiff was the beneficiary of the January 22, 2007 conference call regarding Defendants' letter request that Plaintiff be further compelled to respond to Xspand's Interrogatory No. 5, in which Plaintiff raised the due process concerns. This Court has determined, as part of its broad discretion incident to its power to control its docket, that it was in the interests of sound case management and best use of judicial resources to implement the expedited discovery dispute process requiring telephone conferences. We also considered the interests of both parties and, specifically, the potential prejudice to them from further delaying their day in court with respect to this case initiated in April 2005.

claims relate to allegations that Xspand and BSC made improper comments about Plaintiff and its product to Pennsylvania taxing authorities. Defendants contended that now Plaintiff seeks documents from its competitor dealing with every possible deal Defendants worked on in Pennsylvania, regardless of whether Defendants reached an agreement to purchase the tax liens, and that Plaintiff seeks documents regarding all-encompassing aspects of Defendants' businesses that are not relevant to its claims and are beyond the Court's directive in its July 26, 2006 Order.

As final word with respect to Item A., Plaintiff stated that the Term Sheet Defendants provided to it does not comply with this Court's July 2006 Order. Plaintiff claimed that at the November 2006 oral argument, this was the first time it was aware that there was no joint venture agreement between BSC and Xspand. Thus, Plaintiff argued that the only way it can show an agency relationship between BSC and Xspand is by trying to follow the flow of money. Plaintiff submitted an additional exhibit with respect to Item A., namely PPTS's Trade Authorization Memo regarding BSC's approval of payment for PPTS's legal fees. However, we agree with Defendants that Plaintiff's Exhibit #6 does not relate to this case as it was clearly dealing with PPTS's reimbursable legal fees and costs with respect to its purchase of tax liens from Cuyahoga County, Ohio. Plaintiff's claims in the present case deal with Pennsylvania taxing authorities. In any event, Plaintiff claimed that it cannot simply depose Garzone in order to obtain all of the information it needs regarding the business relationship between the Defendants since it does not yet have all the necessary documents from Defendants. Plaintiff also stated that in its Document Request #12, it requested Xspand's payment of money to consultants in Pennsylvania, and contended that BSC continues to make these payments. Defendants responded that Plaintiff's request regarding the fees

Defendants paid to consultants was denied by the Court.

In our July 26, 2006 Memorandum, with respect to Item #1 of the May 17, 2006 Status Report, Doc. 126, we stated as follows:

> We find that Plaintiff's Motion to Compel should be granted with respect to Request #1. We agree with Plaintiff that it is entitled to the documents regarding the business relationship between BSC and PPTS. We also agree with Plaintiff that it is also entitled to the joint venture agreement between BSC and Xspand. Plaintiff has claimed that BSC is using Xspand to buy tax liens in Pennsylvania and to unfairly compete against it, and that it is entitled to discover the control BSC has over Xspand. We agree with Plaintiff that these documents may be relevant to its claims, especially since Plaintiff has shown that BSC is involved in deciding the compensation of Xspand's executives. These documents may be relevant to Plaintiff's claim that BSC is the entity which actually buys the tax liens through PPTS. We find that the relationship between BSC and Xspand may reasonably lead to evidence relevant to Plaintiff's claims that Defendants tried to undermine its business in Pennsylvania. We find that Plaintiff should be allowed to explore the relationship of BSC and Xspand, and whether BSC is really controlling Xspand as well as PPTS, and if so, the extent of this control. Thus, we shall direct Defendants, within ten (10) days of the date of this Order, to provide Plaintiff with documents regarding the business relationship between BSC and PPTS, and with the joint venture agreement between BSC and Xspand.

(Doc. 141, pp. 7-8).

As Defendants stated, we also denied Plaintiff's request for documents regarding the fees earned by Defendants and their employees. (*Id*., p. 12).

We shall deny without prejudice Plaintiff's Motion to Compel, Doc. 195, with respect to Item A. We shall direct Plaintiff to depose Garzone and to re-depose Scura in order to question them about the relationship between BSC and Xspand. Defendants have provided Plaintiff with the Term Sheet and have represented that BSC and Xspand did not follow the provisions of the

Term Sheet. Counsel for Xspand represented that a joint venture agreement between BSC and Xspand does not exist. Plaintiff can ask Scura and Garzone about the flow of money between BSC and Xspand and ask them if there are any documents relevant to an agency relationship between the Defendants, and if there are additional documents regarding the business relationship between BSC and Xspand not yet provided to it. As Defendants stated, they have given Plaintiff documents regarding the relationship between BSC and Xspand, and all transactional documents regarding Defendants' purchase of tax liens in Pennsylvania. Plaintiff can certainly utilize these documents in questioning Scura and Garzone to explore its claim that BSC is pulling the strings of Xspand and is funding Xspand. Plaintiff will be able to point to specific evidence if it files another Motion to Compel after the stated depositions, based on the deposition testimonies of Scura and Garzone if there are other documents that Defendants have not produced regarding Item A. We are simply not convinced that there are still other documents relevant to Item A. that Defendants have not yet produced, and we would be more than willing to reconsider Plaintiff's request after it re-deposes Scura and deposes Garzone.[5]

To the extent that Plaintiff seeks documents regarding BSC's purchase of Xspand in 2006, we agree with Defendants that these documents are not relevant to Plaintiff's claims and are outside the scope of the relevant time period of this case.

---

[5] At the November 2006 oral argument, it was indicated that Garzone's deposition was scheduled for December 7, 2006. The Court is not aware if this deposition actually transpired or if it was continued. In any event, we find that Plaintiff has not satisfactorily established that additional documents regarding the business relationship between BSC and Xspand exist that Defendants have not yet provided to it.

### B.     All Documents Reflecting Garzone's Work in Connection with Defendants' Business Activities in Pennsylvania

Plaintiff states that Defendants produced no documents in response to the Court's July 26, 2006 Order granting this discovery request. (Doc. 251, p. 4, ¶ B.). Plaintiff indicated at oral argument that the Court's July 2006 Order directed Defendants to produce work performed by Garzone regarding Defendants' business in Pennsylvania, and that to date, Plaintiff has not received any such documents from Defendants. Plaintiff reiterated that Scura testified at his deposition that Garzone approves of the money paid by BSC to Xspand's employees. Plaintiff stated that it has not received any documents from BSC with respect to Garzone's work in connection with Defendants' activities in Pennsylvania. Plaintiff claimed that there must be some documents regarding Garzone's work with Xspand in Pennsylvania. Plaintiff offered no evidence that additional records exist regarding Item B.; rather, it simply stated that there must be some more relevant documents with respect to Garzone's role with Defendant Xspand's business in Pennsylvania.

Defendants argued that they provided Plaintiff with a response regarding Garzone's activities with Defendants' business in Pennsylvania. Defendants stated that they fully explained Garzone's role with Defendants' business activities in Pennsylvania, and how PPTS[6] was involved with Xspand's purchase of tax liens in Pennsylvania. Defendants indicated that PPTS bought tax liens and Xspand then sought to collect on the tax liens. Counsel for Defendants also represented that there are no documents regarding Garzone's role or job description with respect to Defendants' business activities in Pennsylvania.

---

[6]Since we have stated our acronyms in our prior Orders in this case, we will not restate them herein. Further, the parties are well aware of the meaning of all acronyms.

In reply, Plaintiff pointed to its Exhibit Plaintiff #6, the approval Memo signed by Garzone for PPTS's expenses related to its purchase of Cuyahoga County, Ohio's tax liens. While Plaintiff recognized that its Exhibit #6 dealt with the purchase of Ohio tax liens, it argued that this document showed that someone must approve of the money spent in the purchase of tax liens by Defendants' entities and approve of money paid to reimburse those entities with respect to its expenses involved with such transactions. Plaintiff stated that it specifically wanted documents that show what Garzone does for Xspand in Pennsylvania.

As with Item A. above, we are not convinced that there are, in fact, other documents regarding Garzone's role with respect to Defendants' business activities in Pennsylvania. As noted, Plaintiff may have now deposed Garzone and, if so, could have asked him directly what his role was with respect to Defendants' business activities in Pennsylvania. If Plaintiff has deposed Garzone and he has indicated that additional documents exist regarding what his role was with respect to Defendants' business activities in Pennsylvania, Plaintiff can advise the Court, and we will revisit this discovery request. However, at this time, for the reasons stated above, we shall deny Plaintiff's Motion to Compel without prejudice as to Item B., Doc. 215.

### C.    *Documents Regarding Defendants' Securitization of Tax Liens*

Counsel for Plaintiff and Defendants indicated to the Court that Item C., Doc. 215, p. 4, was moot. Thus, we shall not discuss it herein.[7]

---

[7] We note that counsel for Xspand indicated that PPTS purchases tax liens from Pennsylvania taxing authorities and the liens then become part of PPTS' portfolio. According to counsel, the liens purchased by PPTS are not subsequently bundled together, and no securitization of those tax liens occurs.

10

### D.     *Documents Reflecting Lobbying Efforts and Meetings by Defendants with Pennsylvania Government Officials and Representatives*

At oral argument, Plaintiff stated that on November 14, 2006, it received from Defendants *via* Federal Express documents regarding Attorney Gleason's activities to promote Defendants' business in Pennsylvania. Plaintiff indicated that it was to receive more documents on November 15, 2006, as well as a Privilege Log with respect to Gleason's documents. Plaintiff submitted its Exhibit #7, which was a copy of the stated Privilege Log.

Following oral argument, the Court received the documents regarding Attorney Gleason and reviewed them *in camera*. On January 31, 2007, we issued an Order in which we directed Defendants to provide the majority of those documents to Plaintiff. (Doc. 236). We found that some of the documents were subject to the attorney/client privilege and allowed Defendants to redact those documents.

We shall thus deny as moot Plaintiff's Motion to Compel with respect to Item D.

### E.     *Documents Reflecting the Classification of Tax Liens Sales as True Sales and the Proceeds From the Sales as Revenue or Debt*

Plaintiff states in its Status Report with respect to its present Motion that law firms representing Defendants, including Defendants' current firm, K&LNG firm, have issued opinion letters with respect to Defendants' purchase of tax liens, such as "true sale" opinions. Plaintiff states that these type transactional opinion letters are the types of documents in its discovery request which this Court directed Defendants to provide in the July 2006 Order, and it states that it has not received these documents from Defendants. (Doc. 215, p. 7). Also, at oral argument, Plaintiff indicated that it was seeking copies of Defendants' opinion letters dealing with the classification of

11

tax lien purchases as true sales, including these letters from K&LNG law firm.

At oral argument, counsel for Xspand indicated that he had two documents from Blank Rome law firm, dated October 24, 2006 and July 25, 2006, regarding Pennsylvania tax lien purchase transactions.  These true sale opinion letters were to be given to Plaintiff on November 15, 2006.

Defendants also argued that the Court only ordered them to provide Plaintiff with Pennsylvania transactional opinion letters and not such letters dealing with tax lien transactions in other states.  Defendants further stated that K&LNG law firm did not issue any opinion letters regarding Pennsylvania tax lien transactions.

We find that Defendants have complied with Item E.  Defendants are reminded to supplement their response to this discovery request if additional opinion letters regarding Pennsylvania tax liens transactions are found.  As stated above, we also note that we recently directed Defendants to produce several documents pertaining to Attorney Gleason which were submitted to the Court for *in camera* review.   Some of these documents may deal with opinions as to the classification of tax lien purchases.   Further, when Plaintiff deposes Attorney Gleason, it can inquire as to whether he is aware of any other such opinion letters.

### F. Documents Relating to Defendants' Efforts to Purchase Tax Liens in Pennsylvania

Plaintiff argued that the Court ordered it to more fully respond to Defendant Xspand's Interrogatory No. 5 regarding Defendant's request for Plaintiff to identify the municipalities which

Plaintiff is claiming Defendants interfered with Plaintiff's business.[8]  Plaintiff stated that Defendants have interpreted Item F. to mean only documents regarding transactions in which Defendants have closed the deal for tax liens transactions.  Plaintiff claimed that Defendants have indicated that if they disparaged Plaintiff to a municipality, but did not close the deal with the municipality, then Defendants did not have to provide these documents to Plaintiff.  Plaintiff argued that Defendants' remarks about it may have prevented it from doing business with the municipality even if Defendants did not close the deal with the municipality.

Defendants contended that Plaintiff was really seeking a reconsideration of the Court's July 2006 Order, and that "transactional documents" relate to closing documents.  In our July 2006 Memorandum, Doc. 141, p. 24, we directed the parties to meet to narrow the scope of Plaintiff's request, and then we directed Defendants to provide Plaintiff with copies of the transactional documents for the locations Plaintiff claims Defendants interfered with its business.  Defendants stated that Plaintiff now wants documents for deals Defendants did not even close.  Defendants stated that after Plaintiff supplemented its response to Defendant Xspand's Interrogatory No. 5, Plaintiff was then to request Defendants to provide it with Defendants' transactional documents for the municipalities where Plaintiff is claiming Defendants interfered with its business.  Defendants also represented that it was going to respond to Plaintiff's discovery request regarding closing transactional documents.

---

[8]During the recent January 22, 2007 telephone conference, the Court found that Plaintiff's supplemental response to Defendant Xspand's Interrogatory No. 5 was sufficient despite Defendants' claim that it was not. *See* Doc. 232.  At the November 2006 oral argument, Plaintiff submitted as an exhibit, Plaintiff Exhibit #8, a copy of its supplemental response to Defendant Xspand's Interrogatory No. 5.

Since we have found that Plaintiff's supplemental response to Defendant Xspand's Interrogatory No. 5 was sufficient, we shall grant Plaintiff's present Motion with respect to Item F. and direct Defendants to provide Plaintiff with the closing transactional documents for the municipalities where Plaintiff has claimed Defendants interfered with its business, if Defendants have not already provided them.[9]

### G.   Documents and Information as to Defendants' Communications with Commerce Bank

As Plaintiff recognizes (Doc. 215, p. 7), in the Court's July 2006 Memorandum, we stated as follows:

> We find [Plaintiff's Request for Documents and Information as to Defendants' Communications with Commerce Bank] to be reasonably calculated to lead to relevant information, but we shall limit this Request to all documents regarding Xspand's communications with Commerce Bank about the purchase of tax liens in Pennsylvania, including the dates and substances of all these communications, and to any and all documents regarding Xspand's communications with Commerce Bank concerning Plaintiff and concerning Florio's meeting with Bank officials. While Defendants stated that Plaintiff is looking for documents in its Request # 10 which they simply do not have, we shall nonetheless direct Defendants to continue searching for any such documents as we specified and to timely provide any that they find to Plaintiff.

(Doc. 141, pp. 29-30).

Plaintiff also points out that the Court directed Defendants to supplement their response to

---

[9] If Plaintiff further supplements its response to Defendant Xspand's Interrogatory No. 5, then Defendants must likewise provide additional transactional documents with respect to the supplemental municipalities. We again remind both parties of their obligation under Fed.R.Civ.P. 26 (e) regarding their duty to continually and promptly supplement any prior discovery responses if they find additional responsive documents.

its Interrogatory No. 8.[10]

At oral argument, Plaintiff stated that it was seeking documents regarding Defendants' communications with Commerce Bank.  Plaintiff indicated that Mr. Florio contacted Mr. Hill at Commerce Bank and told Hill that Plaintiff's business activities were illegal.  Plaintiff indicated that Mr. Hill then commenced an internal investigation regarding the Banks' dealings with Plaintiff and its financing of tax lien purchases by Plaintiff in Pennsylvania.  Plaintiff requested that the Court direct Defendants to supplement their response to its Interrogatory No. 8.

Defendants argued that Plaintiff has deposed Bank officials and the people who allegedly made communications disparaging Plaintiff, and stated that no witness testified that any such statements were made.[11]  Defendants claimed that Plaintiff has only hearsay statements that Defendants' employees disparaged Plaintiff.  Defendants' counsel represented that Defendants have no documents to give to Plaintiff with respect to Item G.

We shall accept the representation of Defendants counsel that Defendants have no further responsive documents regarding Item G. to provide to Plaintiff, and that Defendants have no

---

[10]Since Plaintiff has stated its Interrogatory No. 8 in its Status Report, Doc. 215, p. 8, we shall not repeat it herein.

[11]We note, at the time of the November 2006 oral argument, counsel advised the Court that Mr. Florio's deposition by Plaintiff had not yet been scheduled.  At argument, Defendants stated that when Plaintiff deposes Mr. Florio it can question him regarding his conversations with Commerce Bank.  We are not aware if Mr. Florio has now been deposed by Plaintiff and, if so, whether he knew of any communications or documents directed to Commerce Bank officials disparaging Plaintiff.  Nor are we aware if, in fact, Mr. Florio identified any such documents and whether they have now been provided to Plaintiff.  If Mr. Florio has been deposed and has identified any documents regarding Plaintiff's Interrogatory No. 8, we direct Defendants to provide Plaintiff with these documents.

documents with which to supplement their response to this request. As noted, if Plaintiff discovers additional information regarding its Interrogatory No. 8 after Mr. Florio is deposed, it can advise the Court and we shall revisit Item G. Thus, we shall deny Plaintiff's Motion to Compel as to Item G.

### H.     *Documents Relating to BSC's Recordation of Contingent Liabilities*

As its final claim in its present Motion, Plaintiff argues that Defendant BSC has failed to comply with the Court's September 11, 2006 Order (Doc. 172) directing it to provide documents reflecting the recordation of contingent liabilities in connection with Defendants' purchase of tax liens. In the September 11 Order, we indicated that BSC must produce all documents, including financial records, for the years 2004-2005 which reflect how it has recorded contingent liabilities with respect to its purchase of tax liens. Plaintiff states that following the September 11 Order, Defendants advised it that no documents responsive to the Order existed. As a remedy for Plaintiff's claimed violation of this Court's Order by BSC, Plaintiff seeks to require BSC to now fully comply with its more expansive document request as it was originally worded. (Doc. 215, pp. 8-9).

At argument, Plaintiff stated that it was seeking evidence from BSC that shows BSC was claiming it [Plaintiff] improperly recorded its purchase of tax liens. Plaintiff stated that Defendants have maintained that no such documents exist, and that Defendants have too narrowly construed the Court's September 11 Order as only requiring them to produce documents relating to tax liens purchases in Pennsylvania. Plaintiff reiterated that as a sanction for Defendants' conduct, the Court should reinstate its original discovery request as stated prior to the Court's limitation of it imposed in the September 11 Order.

Defendants again asserted that Plaintiff was merely seeking reconsideration of another order of the Court. Defendants' counsel represented that BSC has not recorded money received from tax lien transactions as contingent liabilities. Defendants' counsel also indicated that the money received from tax lien transactions was reflected on the computer screen printout sheets Defendants have provided to Plaintiff. Defendants contended that Plaintiff simply did not like the documents it received with respect to Item H. Thus, Defendants argued that BSC has fully complied with the Court's September 11 Order.

In reply, Plaintiff pointed to a September 27, 2006 letter from Attorney Fine indicating that no documents exist regarding Item H. Plaintiff stated that the computer screens Defendants have provided to it only deal with tax lien purchases in Pennsylvania. Plaintiff argued that the Court did not so limit its document request, and did not require BSC to only produce records relating to tax lien purchases in Pennsylvania. Defendants countered that the computer screens they gave to Plaintiff are not only for Pennsylvania transactions, and stated that they reflect transactions in many states.

After hearing from counsel for the parties, we are satisfied that Defendant BSC has complied with the revised discovery request with respect to Plaintiff's Item H. We also agree with Defendants that as to Item H., Plaintiff is essentially seeking an untimely reconsideration of the Court's September 11, 2006 Order. Therefore, we shall deny Plaintiff's Motion to Compel (Doc. 195) with respect to Item H.

  Finally, we find no willful violations by Defendants of the Court's July 26, 2006 and September 11, 2006 Orders, and shall thus deny Plaintiff's request for the Court to find Defendants in contempt. (Doc. 195, ¶ 40., p. 12).

  An appropriate Order follows.

             **<u>s/ Thomas M. Blewitt</u>**
             **THOMAS M. BLEWITT**
             **United States Magistrate Judge**

**Dated: February 20, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNICIPAL REVENUE SERVICES, INC., | : CIVIL ACTION NO. **4:CV-05-0671** |
| Plaintiff | : (Judge Jones) |
| v. | : (Magistrate Judge Blewitt) |
| XSPAND, INC. and BEARS STEARNS & CO., INC., | : |
| Defendants | : |

## **ORDER**

**AND NOW,** this 20th day of **February, 2007**, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Compel Defendants' Compliance with the Court's July 26, 2006 and September 11, 2006 Orders and for Contempt **(Doc. 195)** is **GRANTED** in part and is **DENIED** in part as detailed in the foregoing Memorandum.

                **s/ Thomas M. Blewitt**
                **THOMAS M. BLEWITT**
                **United States Magistrate Judge**

**Dated: February 20, 2007**