IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUNICIPAL REVENUE                  :
SERVICES, INC.,                    :        CIVIL ACTION NO. **4:CV-05-0671**
                                   :
            Plaintiff              :        (Judge Jones)
                                   :
            v.                     :        (Magistrate Judge Blewitt)
                                   :
XSPAND, INC. and                   :
BEARS STEARNS & CO., INC.,         :
                                   :
            Defendants             :

## <u>MEMORANDUM AND ORDER</u>

### I. Background.

On March 13, 2007, we conducted oral argument regarding the pending discovery disputes between Plaintiff and Defendants, as well as non-party Pennsylvania State Senator Pileggi's dispute with Plaintiff.[1]  We now resolve the dispute brought pursuant to the February 13, 2007 Motion to Quash Subpoenas of non-party Senator Dominic Pileggi and the Pennsylvania Senate.  **(Doc. 239)**.

---

[1]On March 17, 2006, the District Court referred this case to the undersigned pursuant to 28 U.S.C. § 636(b) to dispose of all discovery disputes between the parties, both disputes that were ripe at the time of the Court's Order and disputes which become ripe thereafter.  (Doc. 112).  We held the March 13, 2007 oral argument regarding the ripe discovery motions, Docs. 237, 239 and 243.  Specifically, the following discovery Motions were ripe:
    Doc. 237, Plaintiff's Motion to Compel the Depositions of BSC's Employees Patricia Jehle and Paul Friedman;
    Doc. 239, Pennsylvania Senate and Senator Dominic Pileggi's Motion to Quash Plaintiff's Subpoenas; and
    Doc. 243, Plaintiff's Motion for Reconsideration of the Court's February 20, 2007 Memorandum and Order (Doc. 242).
    By separate Memorandum and Order dated March 15, 2007, we have decided upon Doc. 237, Plaintiff's Motion to Compel the Depositions of BSC's Employees Patricia Jehle and Paul Friedman.  (Doc. 257).  Plaintiff's Motion for Reconsideration (Doc. 243) is not yet ripe, since the Court allowed the filing of supplemental briefs.

In an Order dated February 23, 2007 (Doc. 244), we directed the parties to file all of their respective briefs with respect to the aforementioned Motions two days prior to the oral argument. The Motion to Quash Subpoenas of non-party Senator Dominic Pileggi and the Pennsylvania Senate (Doc. 239) is the subject of this Memorandum.

## II.  Motion to Quash Subpoena of non-party Senator Dominic Pileggi (Doc. 239).

Plaintiff served two subpoenas of non-party Pennsylvania State Senator Dominic Pileggi, one to produce a list of documents attached to the subpoena, and the second to seek the testimony of Senator Pileggi.  (Doc. 239, Ex. A).[2]  On February 13, 2007, counsel for Senator Pileggi and the Pennsylvania Senate filed a Motion to Quash Plaintiff's subpoenas, with attached copies of Plaintiff's subpoenas, as well as a support Brief.  (Docs. 239 & 240).   Plaintiff filed, on March 5, 2007, a Response in Opposition to the Motion to Quash Subpoenas and a Cross-Motion to Compel Compliance with its Subpoenas, along with a support Brief and exhibits.  (Docs. 250 & 251).  As stated above, on March 13, 2007, the Court heard oral argument regarding this ripe Motion.

---

[2]Plaintiff issued its subpoenas to Senator Pileggi out of the Eastern District of Pennsylvania.  Counsel for Senator Pileggi wrote a letter to this Court on February 14, 2007, stating that the subpoena is more appropriately addressed by this Court.  Further, Plaintiff consented to the adjudication of the stated subpoena by this Court, and at oral argument Plaintiff conceded that this Court had jurisdiction over the subpoena.  *See* Attorney Bloom's February 14, 2007 letter to Judge Jones and Plaintiff counsel's February 27, 2007 letter to Attorney Bloom.  (Docs. 255 and 256).

In order to comport with Rule 45, and to avoid a delay by requiring Plaintiff to re-issue its Subpoenas to Senator Pileggi properly naming the Middle District of Pennsylvania in the heading of the Subpoenas, we shall deem the Subpoenas amended, upon agreement of counsel, to state that they were issued by the Middle District of Pennsylvania. (Doc. 251, Ex. 1, and Doc. 239, Ex. A).

Counsel for Senator Pileggi and the Pennsylvania Senate moved to quash the Plaintiff's subpoenas pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv) since he claimed that they seek the disclosure of privileged and protected matters.   At argument, as noted in his Supplemental Brief (Doc. 266, p. 1, n. 1), counsel orally moved for a Protective Order under Rule 26(c), in the alternative.[3]   Counsel argued that Senator Pileggi was entitled to absolute legislative immunity and that the documents which Plaintiff requested him to produce were privileged under the Speech and Debate Clause.   Counsel cited to the case of *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), with respect to support for the Constitutionally based legislative immunity doctrine, derived from the Speech and Debate Clause, and to the Third Circuit case of *Youngblood v. DeWeese*, 352 F. 3d 836 (2003), for support that state legislators are protected by the Clause.[4]   Counsel for Senator Pileggi stated that the Speech and Debate Clause bars suit against legislators and prevents testimony by legislators regarding matters within the legitimate legislative sphere, *i.e.* all issues of legislative actions of state legislators.

---

[3]Counsel for the Senator also noted in his Supplemental Brief, Doc. 266, p. 2, n. 2, that Plaintiff's Complaint did not allege how Defendants' dealings with any State legislators prejudiced Plaintiff.   At argument, Plaintiff's counsel essentially indicated that Plaintiff was not aware of any involvement between Defendants and State representatives until it received some of the documents in response to its discovery requests in this case, including the documents it received after the Court's *in camera* review.   Plaintiff has attached some of these documents, including e-mails, referencing state legislators to its original Brief, Doc. 251.

[4]We did not deem Plaintiff as contesting that the stated Speech and Debate Clause applies to federal and state legislators.   In any event, state legislators are accorded legislative immunity similar to the immunity  derived from the Speech and Debate Clause.   *See Larsen v. Senate  of Com. of Pa.*, 152 F. 3d 240 (3d Cir. 1998); *cert.* denied, 525 U.S. 1145 (1999). *See also Fowler-Nash v. The Democratic Caucus of the Pa. House of Rep.*, 469 F. 3d 328, 331 (3d Cir. 2006).

Counsel stated that protected documents include material regarding development of legislation and crafting of legislation, as well as matters involving the legislative process and communications with constituents.   Counsel said that Plaintiff's document subpoena seeks documents regarding legislative activities of Senator Pileggi as evidenced by the list of documents Plaintiff requested in its attachment to this subpoena.   Counsel argued that Plaintiff wants documents regarding the drafting, development and enactment of the Pennsylvania legislation (HB #2638) which allowed for the assignment and the purchase of tax liens by private entities from taxing authorities.  (Doc. 266, p. 2).  Counsel claimed that these documents are part of the legislative process, and he claimed that Plaintiff seeks documents with respect to Senator Pileggi's role in this process.   Counsel stated that Senator Pileggi's documents regarding the complete legislative process before, during and after the Bill's enactment are privileged by the legislative immunity doctrine.   Counsel also stated that Plaintiff's subpoena seeks documents regarding the Senator's legislative efforts and communications with other legislators and his constituents, and that Plaintiff wants disclosure of privileged documents used in the enactment of the stated Bill.   Counsel pointed out that, since the documents are privileged, then it is irrelevant if the documents may help Plaintiff in its present lawsuit.

Counsel stated that the Senator would provide Plaintiff with requested information from financial reports and with respect to political contributions because these documents were admittedly not subject to legislative immunity.  Specifically, in his Supplemental Brief, Doc. 266, p. 3 and n. 4, counsel for the Senator stated:

> As stated at oral argument, the Senator will produce documents
> regarding political contributions. [FN4]
>
> > FN 4.  Information from campaign finance reports
> > reflecting political contributions, which are already
> > available to the public, will be produced because such
> > information is obviously political and not legislative
> > in nature.

We shall thus order Senator Pileggi to provide the agreed upon information to Plaintiff within ten (10) days of the date of this Memorandum and Order.

The Senator's counsel contended that the requested documents, which are dated prior to the enactment of the law, are privileged and protected by legislative immunity, and that the documents dated after enactment of the law are also privileged.  Counsel stated that Senator Pileggi's dealings with the tax lien issue and with Pennsylvania municipalities after the passage of the law were privileged matters, since they were part of the legislative process to see how the law was working and to see if it required revisions.  (Doc. 266, p. 3).  Thus, counsel concluded that Plaintiff's subpoenas, both for documents and for the Senator's testimony, violated the legislative immunity doctrine.

Counsel pointed to other remedies Plaintiff had available to it prior to the law's enactment, such as contacting legislators regarding its position on the proposed law and arguing either for or against its passage.  Counsel also stated that if Plaintiff was unhappy with the law, it had available a remedy, *i.e.* to work against the re-election of the legislators who voted in favor of the law. Counsel requested that the Court grant Senator Pileggi's Motion to Quash Plaintiff's subpoenas, or, alternatively, to grant his oral Motion for a Protective Order, and to deny Plaintiff's Motion to Compel his compliance with the subpoenas.

Plaintiff argued that the documents and testimony it seeks through its subpoenas to Senator Pileggi are not protected by legislative privilege, and Plaintiff cited to the case of *U.S. v. Brewster*, 408 U.S. 501 (1972), for support.   Plaintiff contended that Senator Pileggi circumvented federal law to help Defendant BSC, and Plaintiff contended that the Senator's actions resulted in significant loss of money to Pennsylvania taxpayers.   Plaintiff claimed that Senator Pileggi was involved in influencing Pennsylvania taxing authorities to use Defendants' products and to sell Defendants their tax liens, and stated that the documents reflecting the Senator's influence are the type it was seeking in its subpoena.   Plaintiff argued that Senator Pileggi was not involved in the legislative process in helping Defendants' business activities in Pennsylvania, and in helping with their quest to purchase tax liens and delinquent tax claims from Pennsylvania taxing authorities.   Plaintiff cited to the *McDade* criminal case to support its contention that Senator Pileggi's conduct in assisting Defendants' marketing activities were not protected by legislative immunity.   *See U.S. v. McDade*, 28 F. 3d 283 (1994).

Plaintiff stated that the documents it seeks from Senator Pileggi are relevant to its claims since he was involved with Defendants  in the alleged acts of unfair competition aimed against it. Plaintiff stated that Senator Pileggi influenced Pennsylvania taxing authorities to use Defendants' services and to sell their tax liens to Defendants.   Plaintiff alleged that the Senator received substantial money to promote Defendants' products, and that Defendants relied upon his activities to steer the taxing authorities towards Defendants' services.   Plaintiff said that it wanted the documents regarding Senator Pileggi's alleged activities to influence Pennsylvania municipalities, and the documents regarding the alleged improper marketing campaign and political activity

6

directed against it.

Plaintiff attached to its Brief, Doc. 251, as Exhibits 12-14, e-mails from Defendants and their agents, which, according to Plaintiff, relate to bundling  political contributions to give to Senator Pileggi as reward for his support of their products.  Plaintiff explains its position in detail on pages 2-3 of its support Brief, Doc. 251.[5]  Plaintiff stated that Senator Pileggi was the beneficiary of the bundling activities of the Defendants, and that Scura's documents reveal that the Senator set up meetings with municipal authorities and officials to encourage them to do business with

_____

[5]Again, Plaintiff, in part, relies upon exhibits which are documents that this Court has directed Defendants to produce to Plaintiff, *via* the Court's discovery dispute procedure, despite Plaintiff's prior claim that its due process rights with respect to being heard on discovery matters were somehow being abridged.
One of Plaintiff's exhibits is an e-mail dated February 25, 2005, from Peter Gleason of K&LNG Law Firm, to Kurt Shadle of Xspand regarding political fundraisers for Senators Pileggi and Representative Cappelli. [Representative Cappelli introduced HB # 2638 to the State Legislature.  Doc. 266, p. 2].  The e-mail states in part as follows:

> Attached are links to PDF scanned invitations to two separate
> fundraisers for Pileggi and Cappelli.  In light of their role in
> championing our legislation through their respective bodies,
> not to mention Pileggi's follow-up assistance with Delco/Chester,
> [Delaware County/Chester County] I would recommend a contribution
> from XSPAND.  As we discussed, PA law precludes a corporate
> check or corporate reimbursement for a personal check. I believe
> the Pileggi event is $500 and the Cappelli event is $225.  K&L is
> buying 2 tickets for the Cappelli event and 1 ticket for Pileggi's
> event, and would be pleased to "bundle" our contributions
> with whatever you folks might be able to do there. [Emphasis added].

(Doc. 251, Ex. 13).

We note that in a recent telephonic conference (March 27, 2007), Plaintiff's counsel indicated that it issued subpoenas to non-party Representative Cappelli and that he filed a Motion to Quash the Subpoenas.  Representative Cappelli's Motion to Quash is not yet ripe.

Defendants and to shut out Plaintiff from doing business.  Plaintiff stated that Senator Pileggi was

the "poster boy for the pay to play" scheme it is alleging existed.[6]  Plaintiff indicated that Attorney

Melinson's records, which it received after the Court's *in camera* review, showed Senator Pileggi's

role in this scheme, and that the Senator was contacted by Defendants' agents to arrange meetings

with public officials.  Plaintiff stated that Senator Pileggi then made personal pleas to public officials

and promoted Defendants' business and services in Pennsylvania.  In turn, Plaintiff claims that the

actions of Senator Pileggi effectively precluded it from doing business in Pennsylvania.  Thus, the

information which Plaintiff seeks from Senator Pileggi is not related to his follow-up, with

constituents, regarding the impact of the enactment of HB # 2638 and whether the law needed

amendment. (*See* Doc. 266, Exs. C and D).

Plaintiff concluded that Senator Pileggi was not acting in a legislative nature and in a

legislative sphere with respect to the documents and testimony it seeks from him.  Rather, Plaintiff

stated that the Senator was acting to promote Defendants' business, and that he was not drafting

and passing legislation.  As correctly noted in Senator Pileggi's Supplemental Brief (Doc. 266, p. 2,

n. 3), Plaintiff indicated that it was removing from ¶8. of its January 2007 document subpoena to

Senator Pileggi the reference to "relating  to legislation" contained in document Request No. 8.

(*See* Doc. 239, Ex. A, p. 5, ¶ 8.).  We deem the stated phrase withdrawn from Plaintiff's stated

subpoena.

---

[6]We do not base our present decision on Plaintiff's alleged involvement of Senator
Pileggi in the so-called "pay to pay scheme."  Rather, we base it on our finding that the
documents and testimony which Plaintiff seeks from the Senator simply do not relate to the
legislative process.

In reply, counsel for Senator Pileggi argued that the legislative immunity doctrine is broad, and that the legislative process is dynamic and involved a wide range of communications with other legislators and business officials.  He argued that Plaintiff can get the documents concerning Senator Pileggi from other sources, and that Plaintiff has a remedy.[7]

Plaintiff filed a Supplemental Brief on March 19, 2007, in opposition to Senator Pileggi's Motion to Quash and in support of its Motion to Compel. (Doc. 259).  As discussed below, we agree with Plaintiff that the documents and testimony it seeks in its present Subpoenas relate to business activities that Senator Pileggi allegedly conducted on behalf of Defendants, and relate to political undertakings.  We concur with Plaintiff that the requested documents and testimony do not relate to legislative activities and communications concerning legislation.  We also agree with Plaintiff that, in this case, Senator Pileggi is not entitled to legislative immunity and that he must comply with Plaintiff's Subpoenas.  We find that Plaintiff's document subpoena seeks documents which are not related to the Senator's legislative activities and the passing of legislation (namely, HB # 2638).

## III.  Discussion.

### A.  Rule 45

As stated, the Senator's counsel moved to quash Plaintiff's subpoenas under Rule 45.

The Court in *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 277 F.R.D. 374, 379 (W.D. Pa. 2005),

---

[7]At the March 13, 2007 argument, the Court allowed Plaintiff and counsel for Senator Pileggi to file supplemental briefs regarding legislative immunity.  We have allotted sufficient time for the supplemental briefs.  On March 19, 2007, Plaintiff filed its Supplemental Brief, Doc. 259.  On March 30, 2007, counsel for Senator Pileggi filed his Supplemental Brief with Exhibits A-F, Doc. 266.

stated:

> Generally, Federal Rule of Civil Procedure 45 authorizes the issuance of a subpoena commanding a person to whom it is directed to attend and give testimony, or to produce and permit the inspection of designated documents. [FN7].  Rule 45(a)(1)(C).  Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit.  *See* Adv. Comm.  Note on 1991 Amendments to Fed.R.Civ.P. 45.  In order to properly command a nonparty to produce documents for inspection and copying, it must appear that the documents subpoenaed are within the control of the nonparty witness.  Therefore, even if a district court has personal jurisdiction over the nonparty witness, the court may not compel production of documents over which the witness does not have control.  *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982).  Accordingly, in order to assure production of documents from a nonparty witness, the subpoena should command production in the district court where the witness resides or where the headquarters of the witness are located.

>> FN7.  In federal practice, a Rule 45 subpoena command to a nonparty to produce books and records for inspection and copying is the *only* method by which document inspection may be obtained from non-parties.  Rule 45(a)(1)(C). Furthermore, a subpoena may command production of documents with or without a deposition.  *Id.*

> Rule 45 also requires that the content of the subpoena properly state the name of the district court and the title of the action for which the subpoena is to be served, i.e., the "heading" of the subpoena.  *See generally Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84 (E.D. Pa. 1994). Furthermore, the content of the subpoena must include the name of the person to whom it is directed to produce and permit inspection and copying of designated documents.  Fed.R.Civ.P. 45(a).  These documents must be sufficiently described in the subpoena.  Fed.R.Civ.P. 45(a)(1)(C). Otherwise, an overly broad subpoena may be subject to a motion to quash as it imposes an undue burden on the subpoenaed party.  A subpoena may also be quashed or modified if the court determines that the documents to be produced are irrelevant or otherwise protected matter to which no exception or waiver applies.

> [FN8 was omitted]

*B. Legislative Immunity*

Counsel for Senator Pileggi contends that the documents which Plaintiff seeks in this case involve the legislative process and policymaking decisions made before, during, and after the tax lien authorization Bill was enacted, *i.e.*, Phases I and II of the legislative process. (Doc. 266, pp. 3, 4).  He states that as such, the Senator is immune from Plaintiff's subpoenas under absolute legislative immunity.

This Court in *Brominski v. County of Luzerne*, 289 F. Supp. 2d 591, 593-94 (M.D. Pa. 2003), stated as follows:

> Legislative immunity, an absolute immunity, can be invoked when officials' actions are legislative in nature.  *Gallas v. Supreme Court*, 211 F.3d 760, 773 (3d Cir. 2000).  In determining whether officials are entitled to absolute legislative immunity, "we must focus on the nature of the official's action rather than the official's motives or the title of his or her office."  *Id.  See also, Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) ("Whether an act is legislative turns on the nature of the act, rather than n the motive or intent of the official performing it.")[8]

In the case of *Fowler-Nash v. The Democratic Caucus of the Pa. House of Rep.*, 2006 WL 406611, * 2 (W.D. Pa.), *aff'd.*, 469 F. 3d 328  (3d Cir. 2006), the District Court stated:

---

[8]We recognize that the Third Circuit did not apply to state legislators the two-prong test, *i.e.* determining if an action was both substantively and procedurally legislative when taken, which is applied at the municipal level to  local officials.  *See Fowler-Nash*, 469 F. 3d at 338; *Larsen*, 152 F. 3d at 252.  The Third Circuit in *Larsen,* "drop[ped] the two part legislative facts/procedure test when considering absolute  immunity claims by state legislators."  *Id.* at 339; 152 F. 3d at 252.

Legislative immunity has been held applicable to state legislators since 1951, and is thus relevant to the instant case. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed.1019 (1951). The scope of state legislators' immunity is "coterminous" with the absolute immunity afforded to members of Congress under the Speech or Debate Clause. *Larsen v. State of the Commonwealth*, 152 F.3d 240, 249 (3d Cir. 1998) (see *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 732-33, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1990). [FN1]

> FN1. Pennsylvania's Constitution also contains a Speech or Debate Clause, which has been interpreted in accordance with the federal Constitution's Speech or Debate Clause. Pa. Const. Art. II, § 15; *Lunderstadt v. Colafella*, 885 F.d 66, 74 (3d Cir. 1989).

The District Court in *Fowler-Nash* also stated:

> Defendants' motion refers the doctrine of "absolute" legislative immunity. However, the Supreme Court has been sparing in its recognition of claims to absolute immunity, specifically regarding the legislative immunity created by the Speech or Debate Clause. See, e.g., *Gravel v. United States*, 408 U.S. 606, 622-627, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); see also *Hutchinson v. Proxmire*, 443 U.S. 111, 12-133, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); *Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1881).

*Id.*

Further, the District Court in *Fowler-Nash* stated:

> Legislative immunity includes only those activities, "within the sphere of legitimate, legislative activity." *Id.* at 376. Additionally, whether activities fall within or without the scope of immunity depends on the activities, stripped of motive and intent. *Bogan*, 523 U.S. at 55; see *Tenney*, 341 U.S. at 377.

> . . . the Court has used a "functional" approach to immunity to determine whether various activities fit within the sphere of immunized "legislative activities." In *Gravel v. United States,* the Court held that legitimate legislative activities are those that are "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation." 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In *United States v. Brewster*, the Court held the protected activity must be a part of "the due functioning of the legislative process." 408 U.S. 501, 516, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).
>
> While the Court has never set out a specific test to determine immunity, immunity is determined upon the "functions" it serves, not by persons to whom it attaches. *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).
>
> The Speech or Debate Clause is not so broad as to cover everything done by a legislator regarding the legislative process, nor acts incidentally related. *Brewster*, 408 U.S. at 513-528. Immunity does not cover political activities,[9] including "a wide range of legitimate 'errands' performed for constitutions (sic) [constituents], the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Id* at 512. Immunity also does not extend to: accepting bribes, *Id*. at 526, disseminating classified legislative materials, *Gravel*, 408 U.S. at 625-626, or libelous publications. *Doe*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912. [Emphasis added].

*Id*. at *3.[10]

---

[9]There is no dispute by counsel for Senator Pileggi that purely political conduct is not subject to the protection of legislative immunity.  Doc. 266, p. 10, n. 5.

[10]As Plaintiff states in its Supplemental Brief, Doc. 259, p. 4, the Courts of the Third Circuit continue to rely upon and to cite for support the *Brewster* case.  Plaintiff also cites to the *Fowler-Nash* Third Circuit case, which we have found to be instructional for our case. (*Id*.).

The question herein turns upon whether the documents Plaintiff seeks were within the sphere of legitimate legislative activity, *i.e.* whether they involve legislative matters with respect to the crafting and the passing of the Pennsylvania law which allowed private companies to purchase tax liens from Pennsylvania taxing authorities, and whether they involve the following up on the passage of the law with local officials, Phases I and II of the legislative process, according to the Senator's counsel.  (*Id.*).  The question also to be addressed is whether the documents relate to Senator Pileggi's alleged activities geared at setting up meetings with public officials solely to promote Defendants' business of purchasing tax liens in Pennsylvania.  If indeed the documents relate to this former function, as counsel for the Senator states (*Id.*, pp. 14-15), such legislative matters are within the jurisdiction of the State Senate and relate to a field that legislators have traditionally had the  power to act to pass laws.  Senators act within  the sphere of legitimate legislative activity when considering and passing laws, and act within their legislative capacities. This is precisely the type of activity for which legislators are given legislative immunity.  Drafting and passing laws are clearly the functions of legislative actions.  Documents relating to these types of activities are what Plaintiff is seeking, according to counsel for Senator Pileggi.  We disagree.

Counsel for the Senator argues that Plaintiff's subpoenas should be quashed because they impose an undue burden on the Senator, who is Majority Leader, because they seek documents and testimony protected by the legislative immunity doctrine, and because they infringe on the Senator's own First Amendment rights. (Doc. 266, p. 5).

Initially, we do not find an undue burden imposed by Plaintiff's subpoenas issued to the Senator.  We find that Plaintiff has shown a compelling need for the Senator's documents and his

testimony in this case, which information clearly relates to his alleged involvement with promoting Defendants' products to Pennsylvania taxing authorities.  We find our case differs from the cases cited by the Senator's counsel (Doc. 266, pp. 5-7, and Ex. B), in which the documents and testimony sought (from Representative Perzel) were within the sphere of legitimate legislative activity.  Our Plaintiff has offered evidence to suggest that Senator Pileggi may have performed follow-up assistance with respect to promoting the Defendants' services with Pennsylvania taxing authorities. (Doc. 251, Ex. 13).

Plaintiff clearly does not dispute that Senator Pileggi was acting in his legislative capacity when he considered the Pennsylvania law at issue and acted to pass it.  Nor does Plaintiff dispute that the Senator was performing legitimate legislative activity with respect to checking with his constituents as to how the law was working and in proposing amendments to the law.  However, we agree with Plaintiff that these are not the type of documents and testimony it is seeking in its subpoenas at issue.

In *Larsen*, 152 F. 3d at 249, the Third Circuit Court stated:

> The legislative immunity . . . is derived from the Speech or Debate Clause of Article I, § 6, Clause 1 of the United States Constitution.  It has long been settled that state legislators are also entitled to absolute legislative immunity from suit under § 1983 for legitimate legislative activities taken in their legislative capacities.  *See Tenney v. Brandhove*, 341 U.S. 367, 372-76, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *see also Bogan v. Scott-Harris*, ___ U.S. ___, 118 S.Ct. 966, 970, 140 L.Ed.2d 79 (1998).  Though this immunity is a creature of federal common law, it is derived from the protection accorded the federal legislators.  *See Tenney*, 341 U.S. at 373-74, 71 S.Ct. 783.  Indeed, the Supreme Court has recognized that in civil cases, the scope of the common law legislative immunity accorded state legislators is coterminous with that of the immunity provided by the Speech or Debate Clause. *See Supreme Court of Virginia v. Consumers Union of the United*

*States, Inc.*, 446 U.S. 719, 732-33, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

Recognition of state legislators' entitlement to legislative immunity in § 1983 actions does not end the inquiry because the immunity extends only to acts taken in their legislative capacities. We must still determine whether the Senators performing their role in impeachment proceedings were acting in their legislative . . . capacities. The Supreme Court has adopted a functional approach to immunity issues so that "[w]hether an act is legislative turns on the nature of the act," *Bogan*, 523 U.S. at ___, 118 S.Ct. at 973, rather than the nature of the actor's office or his or her intent. *See, e.g., Consumers Union*, 446 U.S. at 731, 100 S.Ct. 1967 (affording legislative immunity to justices of state supreme court when acting in their rulemaking capacity). Therefore, to determine whether a particular immunity is appropriate, we must look to the interests behind it, *see Owen*, 445 U.S. at 638, 100 S.Ct. 1398, remaining mindful that "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Kalina*, 522 U.S. at ___, 118 S.Ct. at 507.

The *Larsen* Court also stated:

The Supreme Court framed the question to be resolved as "[w]hether the actions of the [Senators] fall within the 'sphere of legitimate legislative activity.'" *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 at 501, 95 S.Ct. 1813 [1975]. The Court began its analysis with a discussion of the purpose of legislative immunity, which it explained is "to protect the integrity of the legislative process by insuring the independence of individual legislators." *Id* at 502, 95 S.Ct. 1813 (quotations omitted). It "prevent[s] intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Id.* (quotation omitted). As such, it reinforces the separation of powers that is fundamental to the structure of both the federal and state governments. *See id.; Tenney*, 341 U.S. at 372-75, 71 S.Ct. 783. It stated that legislative independence is imperiled whenever the power of the judiciary is brought to bear on the legislature. *See Eastland*, 421 U.S. at 503, 95 S.Ct. 1813. An additional purpose of legislative immunity is to shield the legislature from the delay and disruption that a lawsuit can bring. "[A] private civil action, whether for an injunction or damages, creates

16

a distraction and forces [legislators] to divert their time, energy and attention from their legislative tasks to defend the litigation." *Id.*

Consistent with these purposes, the Court has held that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at ___, 118 S.Ct. at 972 (quoting *Tenney*, 341 U.S. at 376, 71 S.Ct. 783).  To determine whether a particular task is in the sphere of legitimate legislative activity, "we look to see whether the activities took place in a session of the House by one of its members in relation to the business before it."  *Eastland*, 421 U.S. at 503, 95 S.Ct. 1813.  More specifically, the inquiry is whether the activities are "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation *or with respect to other matters which the Constitution places within the jurisdiction of either House.*" *Id.* at 504, 95 S.Ct. 1813 (quoting *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (emphasis added). Most recently, the Supreme Court reaffirmed that legislative immunity attaches to actions taken "'in a field where legislators traditionally have power to act.'" *Bogan*, 523 U.S. at ___, 118 S.Ct. at 973 (quoting *Tenney*, 341 U.S. at 379, 71 S.Ct. 783 (applying principle to state legislators)).

*Id.* at 250.

In *Fowler-Nash*, the Third Circuit Court stated:

The Supreme Court has often stated that the purpose of common law legislative immunity is to reinforce the separation of powers and safeguard legislative independence.  *See, e.g., Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *United States v. Brewster*, 408 U.S.  501, 507, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).  Legislative immunity may protect an official exercising a legislative function "from inquiry into legislative acts or the motivation for actual performance of legislative acts," *Brewster*, 408 U.S. at 508, 92 S.Ct. 2531, "from the burden of defending" certain suits, *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), and "from the consequences of litigation's results."  *Id.*

17

>The Supreme Court rejected in *Brewster* the view that the Speech
>and Debate Clause protects "all conduct related to the due
>functioning of the legislative process." *Brewster*, 408 U.S. at 513,
>92 S.Ct. 2531.  The Court stated that, "[w]e would not think it
>sound or wise, simply out of an abundance of caution to doubly insure
>legislative independence, to extend the privilege beyond its intended
>scope, its literal language, and its history, to include all things in
>any way related to the legislative process." *Id*. at 516, 92 S.Ct. 2531.

469 F. 3d at 331.

In *Fowler-Nash,* the Third Circuit Court indicated that the functional approach must be applied to a claim of legislative immunity.  *Id*. at 333.  Thus, to determine if Senator Pileggi is entitled to legislative immunity with respect to the documents and testimony Plaintiff is seeking from him, we look to the function that he was performing with respect to the documents at issue and the nature of his actions.  We must determine whether the actions of Senator Pileggi for which Plaintiff seeks documents fall within the "sphere of legitimate legislative activity."  We agree with Plaintiff that the documents and testimony it seeks relate to functions Senator Pileggi allegedly performed in promoting Defendants' business activities and in setting up meetings with public officials for the benefit of Defendants' business of purchasing tax liens, and that they do not relate in any manner to his actions he was performing with respect to the drafting, passing and following up on Pennsylvania  HB # 2638.

In applying this functional approach, it is clear to this Court that Plaintiff is seeking documents regarding the Senator's alleged conduct in helping Defendants meet with Pennsylvania officials and to influence them to use Defendants' products and services to purchase their tax liens. The function that Senator Pileggi was performing when the alleged promotional and influencing actions occurred and the nature of those alleged actions simply does not involve any legitimate

18

legislative business.  Thus, based on the functional test, we agree with Plaintiff that the documents which Plaintiff seeks Senator Pileggi to produce do not relate to activities he took in a legislative capacity.  Simply put, Senator Pileggi was not acting in a legislative capacity when he was allegedly involved with setting up meetings with public officials and with promoting Defendants' business interests.  These marketing and political activities, allegedly aimed at getting taxing authorities to use Defendants' products to purchase tax liens, had no conceivable legislative purpose.   Plaintiff has made a sufficient showing that the documents it seeks involve more than just the Senator's meetings and discussions with industry groups and constituents regarding the tax lien legislation and the effects of the law's enactment.  Plaintiff is not seeking the Senator's documents and testimony regarding his dealings with these groups in which he obtained their input concerning the law.  Plaintiff seeks documents which relate to the Senator's alleged conduct in promoting Defendants' products to taxing authorities and in influencing them to use Defendants' services.  While HB No. 2638 was significant to both Defendants' and Plaintiff's businesses of purchasing tax liens, Plaintiff does not seek documents regarding the Senator's role in the enactment of this law and in the ensuing oversight as to its effect.  Rather, Plaintiff seeks documents relating to the Senator's alleged conduct in promoting Defendant Xspand's products, which were authorized by the law, but have nothing to do with the law's passage, enforcement and oversight.[11]

---

[11]Counsel for Senator Pileggi attaches as Exhibit C to his Supplemental Brief, the Senator's 2005 proposed bill, as well as Exhibit D, which was a similar proposal that became law (Act 12 of 2006), which he states were the result of the Senator's oversight activities regarding HB # 2638. (Doc. 266, p. 14).  However, as discussed, we do not find that Plaintiff is seeking discovery from the Senator regarding his legislative activities.

Finally, counsel for Senator Pileggi argues that the Senator has his own First Amendment rights and that Plaintiff's subpoenas are threatening him with distracting, harassing, and unduly burdensome discovery. (Doc. 266, p. 16).  We find our case distinguishable from the cases cited by counsel for the Senator (*Id.*, pp. 16-17), since Plaintiff is not seeking documents regarding the Senator's activities of speaking out about the passage of HB # 2638 and its effects.  Plaintiff is seeking documents which relate to the Senator's alleged speaking out about Defendants' products and his alleged promotion of Defendants' services to other governmental officials.  Thus, the documents and testimony which Plaintiff seeks from Senator Pileggi are not found to be protected by the First Amendment.

Accordingly, we find that Senator Pileggi is not protected by the doctrine of legislative immunity, and is not protected by the First Amendment, with respect to Plaintiff's Subpoenas issued to him, since the documents and testimony Plaintiff seeks are not related to his legislative acts and do not involve "the sphere of legitimate legislative activity."   Thus,  we will grant Plaintiff's Motion to Compel Senator Pileggi to comply with its Subpoenas.   We will deny the Senate and the

Senator's Motion to Quash the Subpoenas (Doc. 239), and their oral Motion for a Protective Order.[12]

An appropriate Order follows.

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: April 4, 2007

---

[12]In *Pansy v. Bor. of Stroudsburg,* 23 F.3d 772, 786-87  (3d Cir. 1994), with respect to the elements to consider in a Protective Order, the Court held that broad allegations of harm do not meet the burden of establishing good cause by the party seeking a protective order.   We find that, notwithstanding Senator Pileggi's failure to have filed a written  motion for a protective order, his counsel made only broad claims of harm at the March 13, 2007 oral argument, and in his Supplemental Brief (Doc. 266), and we find that they are not sufficient to establish good cause based on the above discussion.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUNICIPAL REVENUE | : | |
| SERVICES, INC., | : | CIVIL ACTION NO. **4:CV-05-0671** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| XSPAND, INC. and | : | |
| BEARS STEARNS & CO., INC., | : | |
| | : | |
| Defendants | : | |

**ORDER**

**AND NOW, this 4th day of April, 2007,** based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Plaintiff's Motion to Compel Non-Party Senator Pileggi's Compliance with its Subpoenas **(Doc. 250)** is **GRANTED.[13]**

Senator Pileggi is directed to comply with Plaintiff's Subpoenas , as specified in the foregoing Memorandum, within **ten (10) days** of the date of this Order.

2.  The Pennsylvania Senate and Senator Pileggi's Motion to Quash Subpoenas **(Doc. 239)** is **DENIED,** and their oral Motion for a Protective Order is **DENIED** as discussed in the foregoing Memorandum.

---

[13]As noted in our Memorandum, Plaintiff's Subpoenas are deemed as being issued in the Middle District of Pennsylvania for purposes of Fed.R.Civ.P. 45.

22

3.    Senator Pileggi is directed to provide Plaintiff with the agreed upon requested information from financial reports and information with respect to political contributions within **ten (10) days** of the date of this Order.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 4, 2007**