IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUNICIPAL REVENUE SERVICES, INC., | : | CIVIL ACTION NO. **4:CV-05-0671** |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| XSPAND, INC. and BEARS STEARNS & CO., INC., | : | |
| Defendants | : | |

### **MEMORANDUM AND ORDER**

**I. Background.**

On October 4, 2007, Defendants filed a Motion to Modify the Court's August 22, 2007 Scheduling Order (Doc. 353). (Doc. 368). By Order of October 5, 2007, the Court granted the stated Motion and directed that "[t]he supplemental Fed.R.Civ.P. 30(b)(6) deposition of Plaintiff Municipal Revenue Services, Inc., may take place after October 15, 2007, but shall take place within ten (10) days of the conclusion of the depositions of the two Montgomery County Commissioners whose depositions are the subject of a current appeal to United States District Court Judge Jones." (Doc. 370, ¶ 3.).

Thus, the Court granted Defendants' Motion to Modify and allowed the supplemental Fed.R.Civ.P. 30(b)(6) deposition of Plaintiff MRS to be conducted within ten (10) days of the conclusion of the depositions of the two Montgomery County Commissioners. These depositions are the only remaining discovery matters that have been allowed by the Court. No date for Plaintiff's depositions of the Montgomery County Commissioners has been scheduled, since Plaintiff

has filed a Motion for Reconsideration of the District Court's Order disqualifying Plaintiff's present counsel from conducting the stated depositions. (Doc. 387). Plaintiff's Motion for Reconsideration is currently pending before the District Court.

On April 4, 2008, Plaintiff Municipal Revenue Services, Inc. ("MRS"), one-half year after the close of discovery for all matters except for its supplemental Fed.R.Civ.P. 30(b)(6) deposition and the depositions of the two Montgomery County Commissioners, filed a Motion for Leave to Issue a Subpoena to non-party JP Morgan Chase & Co. ("JPMC"). **(Doc. 393).**[1] The discovery deadline for all other matters has passed six months ago, on October 15, 2007.

Plaintiff attached two exhibits (Exs. 1 and 2) to its present Motion and simultaneously filed its support Brief with Ex. A, an unpublished 1991 Eastern District of Pennsylvania Memorandum and Order dealing with the modification of a discovery deadline upon a showing of good cause. *AAMCO Trans., Inc. v. Marino*, 1991 WL 40336 (E.D. Pa.). (Doc. 394). Defendants Bear Stearns & Co., Inc. ("BSC") and Xspand, Inc. ("Xspand") jointly filed their Brief in opposition to Plaintiff's April 4, 2008 Motion. (Doc. 395). Plaintiff filed its Reply Brief on April 8, 2008. (Doc. 396). Subsequently, Defendants requested permission to file a Sur-reply brief, and the Court allowed them to do so. (Docs. 397 and 398). Defendants' Sur-reply Brief was filed on April 14, 2008. (Doc. 399). Plaintiff's Motion for Leave to Issue a Subpoena to non-party JPMC is currently ripe for

---

[1] We note that the October 15, 2007 discovery deadline imposed by this Court's Order of August 22, 2007 (Doc. 353) has lapsed with respect to all other discovery in this case except for the stated supplemental Fed.R.Civ.P. 30(b)(6) deposition of Plaintiff and the depositions of the two Montgomery County Commissioners. The Court found, and counsel agreed at that time, that no further discovery was warranted and required.

disposition. **(Doc. 393).**[2]  Plaintiff seeks both documents and a Fed.R.Civ.P. 30(b)(6) deposition from JPMC.

**II. Discussion.**

As the Court stated in *Korescko v. Bleiweis*, 2004 WL 2005785, * 1 (E.D. Pa.):

> The Federal Rules of Civil Procedure are liberal with respect to discovery, permitting the requesting party to obtain even inadmissible material, as long as it is relevant to the claim or defense of any party, unprivileged, and reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

In *Paluch v. Dawson*, 2007 WL 4375937, * 1 (M.D. Pa.), the Court stated:

> Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial. *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The polestar of discovery is relevance. Relevance for discovery purposes is defined broadly. The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller,* 211 F.3d 57, 65 (3d Cir.2000). Rule 26(b)(2) authorizes a court to limit discovery where (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the

---

[2]On March 17, 2006, the District Court referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1) to resolve all discovery disputes between the parties. (Doc. 112).

> importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The Court stated in *Act, Inc. v. Sylvan Learning Systems, Inc.*, 1999 WL 305300, *1 (E. D. Pa.):

> [C]onsideration of this dispute is governed by Rules 26 and 45 of the Federal Rules of Civil Procedure. Together, these rules direct that I make a three-part inquiry as to each discovery request: first, whether the information sought is relevant under Rule 26(b)(1); [FN2] second, whether the information is subject to protection as a trade secret or other confidential commercial information, *see* Rules 26(c); 45(c)(3)(B)(I); [FN3] third, if the information is subject to such protection, whether the party who seeks it has established a "substantial need for the material that cannot be otherwise met without undue hardship "Rule 45(c)(3)(B). [FN4] *See generally, e.g. Mycogen Plant Science, Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625-26 (E.D. Pa. 1996).

(footnotes omitted).

Plaintiff states that it seeks leave to subpoena non-party JPMC because "MRS seeks to obtain testimony of a corporate designee and documents relating only as to how the sudden financial demise of Defendant Bear Stearns, and the hastily arranged purchase of that company by JP Morgan with the assistance of federal regulators, may affect various aspects of this case, going forward." (Doc. 396, p. 1). Plaintiff contends that this limited discovery would be necessary and useful to both it and this Court. While the Court certainly concurs with the *AAMCO* Court that a trial court has discretion to modify a discovery deadline, such a modification to the scheduling order must be based on a good cause showing. The Court finds that Plaintiff has not made a good cause showing with respect to its instant Motion.

4

While the Court does not know what effect, if any, the recent announcement that JPMC has offered to acquire Bear Stearns for approximately 1% of Bear Stearns' February 29, 2008 book value, and later increased offer of $10.00 per share, will have on this case, the Court will not open a new chapter in the epic discovery of this case which has been conducted for over three (3) years (*i.e.* since the April 1, 2005 date of filing of Complaint).  Nor will this Court permit new discovery to determine what the effect of JPMC's buy out of Bear Stearns will have on this case since we agree with Defendants that it is not relevant to Plaintiff's claims in this case.  As stated above, this Court has specifically held open the discovery process in this case only with respect to Plaintiff's supplemental Fed.R.Civ.P. 30(b)(6) deposition, and the depositions of the two Montgomery County Commissioners.  The discovery in this case has, for all other matters, expired on October 15, 2007.

In this case, Plaintiff has essentially alleged that Defendant Xspand unfairly competed with it for the purchase of tax liens from Pennsylvania taxing authorities and that Xspand was acting on behalf of BSC since BSC could not directly make the purchases itself.  Plaintiff claims that Xspand would then sell the tax liens on its books to BSC and a secondary security market, where BSC would bundle the tax liens from different taxing authorities and then sell them as securities or bonds to investors.  Plaintiffs have referred to this process as the securitization of tax liens by BSC.[3]

---

[3] We have previously noted that Plaintiff has also argued that one of the issues in this case is the manner in which Defendants used Plymouth Park Tax Services, LLC (PPTS).  Plaintiff contends that Defendants used this entity, which according to Plaintiff is a subsidiary of Defendant BSC, to unfairly compete against it in Pennsylvania for the purchase of tax liens from Pennsylvania taxing authorities.  Plaintiff contends that Defendants market their services and product to Pennsylvania taxing entities by representing that Xspand and its parent corporation, Plymouth Financial, would be the purchasers of the tax liens when the purchaser was actually BSC, operating through its subsidiary, PPTS.  Plaintiff contends that tax liens which are purchased by Defendant BSC, through PPTS, are used to create marketable securities which

Plaintiff has also alleged in previous filings in this case the following:

> Defendant Bear Stearns was funding payments to public officials, using its joint venture partner, Defendant Xspand and its executives as conduits.  MRS maintains that these business practices are a blatant violation of federal law, and a blatant conflict of interest violative of aspects of state law as well, such as the state Ethics Act. MRS' efforts to prove that Defendant Bear Stearns has been operating illegally in Pennsylvania for years, and thus unfairly competing against MRS.  Indeed, given its funding of improper payments to public officials and given the campaign donations improperly made to promote its business interests, Defendant Bear Stearns should not have been involved in funding Xspand's operations in Pennsylvania, at all.

(Doc. 289, pp. 6-7, ¶'s 16.-20.).

Further, Plaintiff has claimed that BSC's Public Finance Department worked with Defendant Xspand to solicit business in Pennsylvania.  Plaintiff has stated that:

> Defendant Xspand was but the agent of Defendant Bear Stearns in the marketplace and further, that wherever Defendant Xspand was paying public officials, making political contributions, and hosting political fundraising events, it was always acting as an illegal conduit for Defendant Bear Stearns in doing so.

(Doc. 289, p. 9, ¶ 27.).

Plaintiff has also asserted that Defendants' marketing materials used in Pennsylvania included false and misleading descriptions of Plaintiff's services.

---

BSC sells in a lucrative after-market.  Plaintiff claims that Defendant BSC was prohibited by federal law from purchasing tax liens itself and from making political contributions and that it was using Defendant Xspand as a conduit for these activities, and thus unfairly competing against Plaintiff.

Since Plaintiff's Ex. 2 attached to its present Motion (Doc. 393), a Reuters' Article on the Timeline of Bear Stearns' demise, details the chronology of events leading to JPMC's proposal to buy Bear Stearns, we shall not discuss this history herein. Plaintiff states, "[JPMC] has [] declined to specify exactly what segment of businesses within Bear Stearns that it will integrate into its company, and which segments, if any, it may shed upon its acquisition of Bear Stearns." (Doc. 393, p. 3, ¶ 7.). While Plaintiff states that the unanticipated developments regarding the fate of BSC may have an impact on its case (*Id.*, ¶ 8.), this impact is purely speculative. It is uncertain if JPMC will even retain the segment of BSC's businesses which allegedly purchased delinquent tax liens from local Pennsylvania taxing entities. To date, the shareholders of Bear Stearns have not yet voted on whether to accept of reject JPMC's latest bid of $10.00 per share to acquire Bear Stearns. Nor is it certain if another company will make a counteroffer to the shareholders of Bear Stearns.

Plaintiff also states that "[i]t is not known whether [JPMC's] acquisition of Bear Stearns includes the assumption of liabilities which attach to Defendant Bear Sterns arising out of this litigation." (Doc. 393, p. 4, ¶ 10.). Plaintiff further states that it is not known if any executives employed by BSC who Plaintiff contends had involvement in BSC's operations in Pennsylvania will continue to be employed by the successor company to Defendant BSC. However, it is not known if JPMC, after the acquisition of BSC, will in fact be conducting any of the former operations of Defendant BSC in Pennsylvania.[4]

---

[4]As Defendants note (Doc. 395, pp. 2-3, n. 2), it seems highly unlikely, at the present time, that JPMC would even have formulated a business plan with respect to Defendants' activities of purchasing tax liens in Pennsylvania, and with respect to which of Defendants' employees involved in these activities will be retained, when its proposed acquisition of BSC has not yet been completed, especially since it is facing more significant decisions and hurdles,

Plaintiff concludes as follows:

>MRS wishes to issue a subpoena upon JP Morgan Chase to try to clarify these issues and to ascertain whether the demise of Defendant Bear Stearns, and the recently announced acquisition of that company by JP Morgan Chase would have a material bearing on any aspect of this case.
>
>MRS requests leave of this court to issue a subpoena to JP Morgan Chase in New York City, to obtain both records and testimony from a corporate representative of JP Morgan Chase on the topics described in a proposed Schedule "A," which is attached hereto [Doc. 393] as Exhibit "1."
>
>MRS seeks leave of this Court to subpoena documents and a 30(b)(6) deposition on the limited and very narrowly tailored categories of information and records set forth in the attached Schedule "A." The single deposition that MRS seeks of JP Morgan Chase can be conducted within the next thirty (30) days, and should not further delay the ultimate resolution of all remaining discovery matters.

(Doc. 393, p. 5, ¶'s 14.-16.).

We agree with Defendants that Plaintiff has not shown good cause for the Court to make any further modifications of its above stated Orders regarding the final phase of the long-lasting (over three years) discovery remaining in this 2005 case. We concur entirely with Defendants that Plaintiff's contention that it should be allowed to discover what JPMC's future plans are for Xspand's businesses in Pennsylvania is not a basis to grant Plaintiff's present Motion. All of the improper conduct alleged in Plaintiff's pleading occurred before JPMC announced its acquisition of BSC. The

---

such as how to deal with BSC's brokerage firm business and BSC's mortgage-backed securities problems, regarding its attempt to gain approval of its acquisition and to finalize the deal.

acquisition of BSC by JPMC, if it is approved by BSC's shareholders,[5] will occur well after the relevant time period of Plaintiff's claims in this case. We find that Plaintiff's request to issue a subpoena to JPMC for purely speculative information is not a sufficient showing that the information is relevant or that Plaintiff has a substantial need for the information.

As the Court stated in *Emtec, Inc. v. Condor Tech. Solutions, Inc.*, 10998 WL 242603, *2 (E.D. Pa.):

> "Under Federal Rule of Civil Procedure 26(b)(1) parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action....The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Under this liberal standard, material is relevant if it bears on, or reasonably could bear on, any issue that is or may be involved in the litigation. *See Stainless Broadcasting Co. v. Guzewicz,* 1997 U.S. Dist. LEXIS 16849, *1 (E.D.Pa. October 21, 1997) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978))."

Plaintiff attaches a copy of its Schedule A to its proposed subpoena to JPMC as Ex. 1 to its present Motion, Doc. 393. We shall not repeat it herein. We do not find that any of the information which Plaintiff seeks from JPMC is directly related to the elements of Plaintiff's claims against Defendants. Nor do we find that this information is sufficiently relevant to this case. Plaintiff has not sufficiently shown that it is entitled to any of this information for the purpose of developing its claims against our Defendants.

---

[5]As Defendants note (Doc. 395, pp. 3-4, n. 2, "no transaction has yet been consummated between [JPMC] and Bear Stearns."

While Plaintiff (Doc. 396, p. 2) disputes Defendants' contention (Doc. 395, p. 3) that it has not requested prospective relief in this case, Plaintiff has no legitimate need to learn about JPMC's future plans for Xspand's Pennsylvania businesses operations. It is simply too uncertain if JPMC plans to continue Xspand's tax lien acquisition business in Pennsylvania, if these operations will be sold to another non-party entity, or if these operations will be terminated. Whatever JPMC may decide, and it is not clear if it has made any plans in connection with any of BSC's operations since the acquisition has not even been approved yet, as Defendants point out (Doc. 395, p. 3), at least some of the new discovery Plaintiff seeks will relate to confidential business discussions which may be protected form disclosure by a major competitor of Xspand in Pennsylvania. Thus, we agree with Defendants and find that some of the information which Plaintiff seeks from JPMC would be confidential commercial inforamtion under Rules 26(c)(7) and 45(c)(3)(B)(I).

We also agree with Defendants (Doc. 395, p. 4) that Plaintiff's proffered reason for leave to subpoena JPMC, *i.e.* to learn whether certain witnesses employed at BSC and who were involved in the Pennsylvania operations of BSC, will be available for trial, is meritless. We find it too speculative to assume that any of the BSC employees who were involved in its Pennsylvania operations may be unavailable for trial. In any event, as Defendants point out, Plaintiff has already deposed these individuals, and their testimony has been preserved if they are actually unavailable for trial. There is no trial date even set in this case, and the parties have not yet filed dispositive motions.

We find Plaintiff's present Motion to be entirely based on speculation of events that have not yet transpired and that may never transpire. We find that to allow Plaintiff leave to conduct such

speculative additional discovery, after the close of discovery, limited as it now claims it will be, which based on our experiences with this case is highly doubtful, would be a waste of the Court's judicial resources as well as an unfair expense to Defendants after over three years of very contentious discovery.[6]  Moreover, as Defendants point out,  there  is no claim or evidence that, even if JPMC's acquisition of BSC is accomplished, either party Defendant, if under the direction of JPMC, will likely engage in wrongful conduct in the future, *i.e.* after the acquisition.  We agree with Defendants (Doc. 399, pp. 3-4) that Plaintiff has not offered sufficient evidence to show good cause to justify the granting of its present Motion for Leave to Issue a Subpoena on JPMC.

Plaintiff has not shown that any employee of JPMC is a necessary fact witness who has direct knowledge relating to its claims in this case.  Plaintiff seeks information from JPMC relating to its future plans for the tax liens activities and operations of Defendants in Pennsylvania, and "seeks ... to inquire as to whether Defendants' businesses will continue at all; if so in what form ... ."  Plaintiff merely speculates that this information may affect its theory of damages in this case.  (Doc. 396, pp. 3-4).  Plaintiff has made no showing whatsoever that if JPMC's proposed acquisition of BSC is approved by BSC's shareholders and is completed, any executive of JPMC has knowledge at this time as to JPMC's future plans for Defendants' tax liens operations in Pennsylvania.[7]

---

[6]We agree with Defendants' note, based on the history of the discovery in this case, and find that if the Court were to allow Plaintiff to reopen discovery after over three years has lapsed, this would be the beginning, rather than the end, of this new line of inquiry.  (Doc. 399, p. 5, n. 6).

[7]Plaintiff offers no support for its note that JPMC's proposed acquisition of BSC "will be approved by Bear Stearns' shareholders and will be finalized." (Doc. 396, p. 4, n. 2).  As Defendants correctly note, "there is as yet no finalized transaction between [JPMC] and Bear Stearns and no reason to believe that anyone has given consideration to Xspand's future

Thus, we concur with Defendants that Plaintiff has not shown that the information which it seeks from JPMC is relevant to the instant case. We also find that requiring non-party JPMC to comply with Plaintiff's proposed subpoena would be unduly burdensome in light of the lack of showing by Plaintiff that JPMC has made any business decision at this time as to future plans of Defendants' tax liens operations in Pennsylvania, when its acquisition of BSC has not yet been approved and is not yet completed.

Simply because JPMC may acquire BSC sometime in the future does not show that JPMC will have anything to do with Defendants' activities related to the purchase of tax liens in Pennsylvania. We do not find that Plaintiff has offered any evidence which demonstrates that JPMC has made any determinations as to what role Defendants' business efforts to purchase tax liens in Pennsylvania will play if and when it acquires BSC. There is no evidence that JPMC will indeed maintain and get involved with any alleged prior business activities of BSC to purchase tax liens in Pennsylvania.

Plaintiff has no evidence that JPMC will continue Defendants' operations relevant to this case and that JPMC will play a direct role with respect to Defendants' business activities in Pennsylvania. Thus, the Court shall deny Plaintiff's Motion for Leave to Subpoena JPMC since Plaintiff has not

---

businesses." (Doc. 399, p. 5, n. 5).

shown good cause for the modifications of the Court's existing Scheduling Orders.  (Doc. 393).

An appropriate Order follows.

                                            **s/ Thomas M. Blewitt**
                                            **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: April 17, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUNICIPAL REVENUE SERVICES, INC., | : : : | CIVIL ACTION NO. **4:CV-05-0671** |
| Plaintiff | : : | (Judge Jones) |
| v. | : : | (Magistrate Judge Blewitt) |
| XSPAND, INC. and BEARS STEARNS & CO., INC., | : : : | |
| Defendants | : | |

## ORDER

**AND NOW,** this 17th day of **April, 2008**, **IT IS HEREBY ORDERED THAT:**

Plaintiff's Motion for Leave to Issue Subpoena to JP Morgan Chase & Co. **(Doc. 393)** is **DENIED.**

                                                 **s/ Thomas M. Blewitt**
                                                 **THOMAS M. BLEWITT**
                                                 **United States Magistrate Judge**

**Dated: April 17, 2008**